## William Gray, Jr. *vs.* Board of Aldermen of Boston.

Suffolk. March 10. — May 13, 1885. W. Allen, Colburn, & Holmes, JJ., absent.

Under the Gen. Sts. *c*. 19, § 17, and the St. of 1869, *c*. 111, (providing that the board of aldermen of Boston may make and maintain common sewers,) and the St. of 1873, *c*. 205, (providing that said board may take and divert the water of a stream within the city, and devote the same to the purposes of sewerage and drainage,) the board may pass an order for a single structure which shall serve both as a conduit for the stream and as a common sewer; and, so far as it is needed for the latter purpose, may assess, under the Gen. Sts. *c*. 48, § 4, upon those benefited thereby their proportional part of the expense of the structure as a sewer.

PETITION for a writ of certiorari to quash an order of the board of aldermen of the city of Boston, approved on August 19, 1874, assessing the petitioner a proportional part of the expense of constructing a sewer between Dudley Street and Quincy Street, in that part of Boston formerly Dorchester. The case was reserved by *Devens*, J., for the consideration of the full court, and appears in the opinion.

*G. O. Shattuck*, for the petitioner.

*A. J. Bailey*, for the respondent.

DEVENS, J. By the St. of 1869, c. 111, which repealed §§ 1–3 of the Gen. Sts. c. 48, cities and towns were authorized to lay out such main drains and common sewers as are deemed necessary for public convenience or health. Lands might be taken therefor by proceedings similar to those which are had in laying out highways; and all persons suffering damages thereby were to have the same rights and remedies for ascertaining the same that existed in the case of laying out highways or town ways. This authority to lay out sewers was properly exercised in Boston by the board of aldermen. Gen. Sts. c. 19, § 17.

By the Gen. Sts. c. 48, § 4, every person who entered his own drain into the common sewer, or by more remote means received benefit therefrom, was liable to pay his proportional part of the expense of constructing and repairing the same, to be ascertained as therein provided. In the city of Boston not less than one quarter part of the expense was to be paid by the city, and not included in the charge made to those using such sewers. § 7.

The St. of 1873, c. 205, provided, in § 1, that "the board of aldermen of the city of Boston may, for the purposes of sewerage and drainage, take and divert the water of any streams or water-courses within the limits of said city, and devote the same to the purposes aforesaid; and may take all necessary land to widen, deepen, or straighten the channel of such water-courses, and pave, enclose, and cover the same." Section 2 provided for the ascertainment and recovery of damages by those who might suffer them.

The St. of 1873 was not intended to repeal the then existing statutes, or to deprive the aldermen of any power which they then had in regard to the subject. It conferred an additional

power, and is to be construed in connection with, and as supplementary to, the existing legislation. Its object was to enable the aldermen, for the purposes of drainage and sewerage, to take and divert the waters of any brook in the city, and this whether the sewer in which they were used, or to which they were diverted, was or was not of benefit to the owners thereof. It had been held in *Bennett* v. *New Bedford*, 110 Mass. 433, that a structure intended to convey the waters of a natural stream as well as to be used as a common sewer did not thereby lose its character as a common sewer. While authority was not needed to conduct water, either that of a natural stream or of the surface, through a common sewer, the right to take and divert a stream for the purpose of sewerage, and devote it thereto, was deemed to require additional legislation. When thus taken and diverted, the authority was given properly to prepare the channel through which it would pass, by taking the necessary land, and by properly paving, covering, and enclosing it. The power to construct a sewer was not given by the St. of 1873 ; the authority to do that rested upon, and existed by, the previous legislation.

It is argued that the St. of 1873 contemplated that no assessment would be made on the owners of abutting estates, not merely because no provision was made therefor, but from the character of the act itself. Assuming this argument to be correct, it is so because, as the object of the statute was to invest the aldermen with the power to take and divert water for the purpose of sewerage, it could not be supposed that ordinarily this could be attended with any advantage to the owner of the water or water-rights thus interfered with. The act would permit the waters of a stream to be diverted and devoted to sewerage purposes when the owner thereof, owing to many causes, might receive no benefit from the sewer through which it was conducted.

The power to construct a sewer, and the power to divert the waters of a brook for sewerage purposes, and to provide a proper channel for the purpose, both existing, it was competent to arrange for a single structure which should serve both as a conduit for the brook and as a common sewer, and, so far as it was needed, and existed as a common sewer, to assess upon those entering and using it, or benefited thereby, their proportional

part.   The board undertook by its adjudication to provide for such a structure.   It laid out a common sewer, took the land therefor, assessed the damages, and, as a part of its order, took and diverted the brook for the purposes of the sewer.

The petitioner is within that class of persons benefited by it, as a sewer; and, so far as the structure may fairly be considered such, he should bear his proportional part thereof.   So far as it was constructed for an additional purpose, there has been no attempt to assess him.

Where a single structure is thus made for two distinct objects and purposes, there is a difficulty in ascertaining how much one ought properly to bear who is liable to assessment for expenditures only so far as a single object or purpose is concerned.   But this difficulty is not insuperable, nor such as to compel us to hold that an assessment should be relinquished unless two structures are made where one would serve the purpose.   The rule adopted by the aldermen does not leave the petitioner any just ground of complaint.   He was assessed for that expenditure which was necessary for the structure as a sewer. Using the actual outlay, as far as possible, as the measure of value in their determination, the board of aldermen adjudicated what was the cost of an ordinary sewer in the Dorchester Brook valley, such as would have been required had a common sewer been all that was there needed, and the purpose of which was entirely satisfied by the structure which had been built, while other objects were also attained by it.   Upon this basis, having deducted the one fourth which the city was to bear, they made their assessment.   The rule adopted appears to be entirely fair, and if, acting on this basis, the petitioner has been over assessed, his remedy is not by a petition for a writ of certiorari.

*Petition dismissed.*