SHERMAN NELSON & others, trustees, *vs.* INHABITANTS OF GEORGETOWN & others.

Essex.   November 9, 1905. — January 5, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Municipal Corporations.   Charity.   Trust.*

A gift was made to a town of a building for a library and of a fund which was to accumulate for twenty years, with a provision that after that time the town by a vote of two thirds of its legal voters might act as they thought best for the good of the people of the town in regard to selling the library building and

adding the proceeds to the capital of the fund and the erection of a new building. A board of trustees was provided for to whom the donor left "the details of the management and regulation" of the trust. After the expiration of the twenty years, the town, by a vote of two thirds of its legal voters, accepted the gift of a certain lot of land as a site for a new library building and voted that the trustees be instructed to erect a library building on the lot at a cost not to exceed $15,000. The trustees in good faith made a contract for the erection of a library building to cost less than $15,000 and later made a supplemental contract including extras, by which the whole cost of the building was to be $16,505. The town at its next annual meeting by a two thirds vote accepted and approved the report of the trustees which stated these contracts and payments amounting to $10,000 on account of them. *Held*, that the town by the terms of the gift had authority not only to select the site for the new building but also to fix the cost of it, and that although under the first vote of the town limiting the cost to $15,000 the second contract of the trustees to pay more than $15,000 for the building did not, when made, bind the town, yet the subsequent vote ratified this contract and made it as binding on the town as if originally authorized.

A gift to a town for a library provided that the details of the management and regulation of the fund should be left to the trustees, and gave the town authority by a two thirds vote of its legal voters to select the site for the library building and to fix its cost. The trustees, having the fund in their hands, made a contract for the erection of a library building at a cost which was in excess of their original authority and reported this contract and certain payments on account of it to the town, which by a two thirds vote at an annual town meeting ratified their acts. Upon a bill by the trustees for instructions as to paying to the contractor the balance called for by the contract the court, in holding that the acts of the trustees had become binding on the town by ratification, also held that, although the details of management and regulation, except as to the site and cost of the library building, belonged to the trustees, yet the fund was the property of the town and should be in its custody, and directed the trustees to deliver it to the town treasurer or to such other officer as the town might direct; but, inasmuch as the trustees had made the contract in good faith, ordered that the fund when paid over should be charged with a trust in their favor to the extent necessary to indemnify them against any loss by reason of personal liability to the contractor.

BILL IN EQUITY, filed in the Superior Court on March 30, 1905, by the trustees for the year 1904 of the Peabody Library in Georgetown, established in 1869 by George Peabody, late of London, England, against the town of Georgetown, the trustees of the said library elected for the year 1905, and Edwin H. George, having a contract with the plaintiffs for the erection of a library building, for instructions.

The case came on to be heard on the bill and answers before *Gaskill*, J., who at the request of the parties reserved it and all questions of law therein for determination by this court.

The letter of gift, the material portions of which are quoted in the opinion, was dated at London, January 23, 1869. It con-

tained the following paragraph in regard to the powers and constitution of the board of trustees:

"I leave the details of the management and regulation to the Board of Trustees, who shall be constituted thus: — The settled or stated minister of each religious society in the town, including the minister in Byfield Parish, shall be *ex officio* a member. The remainder of the board shall consist of six members who shall be residents of different sections of the town, as follows — two shall be resident in what are school districts, numbers one, two and three; three shall be residents in districts four and five; and one shall be a resident in districts six and seven; — and said Trustees shall be chosen annually by the Town."

The vote of the town of Georgetown of March 12, 1904, mentioned but not quoted in the opinion, was passed at its annual town meeting for that year by a vote of two thirds of its legal voters, and was as follows:

"That the Town accept the lot known as Lincoln Park as a gift from the donors as a site for the Library building, and that the Trustees of the Peabody Library be instructed to erect a Library building on that lot at a cost not to exceed $15,000, ready for occupancy."

On August 18, 1904, the defendant George made a contract with the plaintiffs to erect the library building for the sum of $14,998, which by a supplementary agreement of September 15, 1904, in regard to extra work, was changed to $16,505. The defendant George proceeded with the work with due diligence, and had nearly completed it at the time of the annual meeting of the town of Georgetown in March, 1905, at which the action was taken which is described in the opinion. Various payments on account were made to him by the plaintiffs, but there was still a balance of several thousand dollars due to him at the time of the filing of the bill.

*H. F. Hurlburt, Jr.,* (*B. B. Jones* with him,) for the plaintiffs.

*W. S. Knox,* for certain defendants.

*H. J. Cole,* for the defendant George.

HAMMOND, J. 1. The letter of the donor is addressed to "the inhabitants of the town of Georgetown," that is, to the town by its proper corporate name. In it the donor states that in accordance with a promise theretofore made by him he had

" caused a building to be erected for the purpose of a public library for the benefit of yourselves and your successors " ; that he takes " great pleasure in presenting it to you, together with about twenty-four hundred volumes of standard works which . . . are now in the hands of the Library Committee"; and that he had also placed in the hands of the finance committee of the library the balance of the $12,000 which he had originally promised.

He then states that $3,000 of this balance " shall be always kept invested and the income thereof applied to the increase and care of the library " ; that " the remainder shall be kept invested and accumulate until it shall amount, either by itself or in connection with other donations (if such there shall be) to the sum of not less than twenty thousand dollars, when it may be used for the erection of such a building as may then be necessary to furnish suitable accommodations for the library "; and that " the building which has been erected, is to be absolutely the property of the town, for the purpose of a library building, and so long as it shall be used for such purpose, it may stand on the site it now occupies on the Memorial Church lot."    Then, after a paragraph not here material, comes the following:

" If the building now erected should at any time within the space of twenty years from the 1st inst. (January 1, 1869,) be considered not sufficient to accommodate the library and inhabitants who resort to it, and the sum of $20,000, (named) has accumulated and on hand, the voters of the town, assembled by legal notice, may by a vote of three-fourths of such legal voters fully empower the inhabitants of the town to have the present building sold for removal and a new one of brick, as stated, erected on the same site, and no other site shall be used for a library building before the 1st of January, 1889; after which time the inhabitants of the town by a vote of two-thirds of the legal voters shall act as they think best for the good of the people of the town : if the present edifice is sold and removed, the proceeds may be added to the capital on hand and be considered a part of the $20,000 required as herein stated."

It is manifest that the gift both of the building and of the remaining fund is to the town in its corporate capacity, with certain limitations and restrictions as to the manner in which the fund shall be expended, and as to the erection of a new build-

ing.   We are of opinion that so far as respects the erection of any new building the authority in the town after January 1, 1889, by a two thirds vote of the legal voters to "act as they think best for the good of the people," extended not only to the selection of a site for the new building but also at least to the question of its cost.   The town by such a vote had the power to fix the cost as well as the site, and the vote of March 12, 1904, was binding upon the trustees.   In so far, therefore, as the trustees exceeded this authority, their action was not originally binding upon the town.

But that is now of no consequence, because it appears that the town, at its annual meeting on the first Monday of March, 1905, with knowledge of the contracts which had been made by the trustees " and of the amount to be paid by the terms thereof, accepted and approved the report of the . . . [trustees] . . . in which payment on account of said contracts to an amount of about $10,000 was shown."   It was not contended before us, and we do not understand it to be contended by any of the parties to this suit, that the vote in favor of this action was less than a two thirds vote.   Under these circumstances the vote of the town must be regarded as a ratification of the act of the trustees, and the contracts are binding upon the town the same as if originally authorized.   It follows that all the contracts are now binding upon the town.   *Arlington* v. *Peirce*, 122 Mass. 270, and cases cited.

2.   Although the details of the management and regulation of the fund so far as respects its use for library purposes (except as to the site and cost of the library building) are in the trustees, yet the fund is the property of the town and should be in the custody of the town, to be drawn upon by the action of the trustees as needed from time to time.   It therefore should be delivered up to the treasurer of the town or such other officer as the town may direct.   Inasmuch however as the trustees in making the contracts seem to have acted in good faith, and fear that they may be held personally liable to the contractor, we think that the fund when paid over should be held charged with a trust in their favor, to the extent necessary to indemnify them against any loss by reason of such personal liability.

*So ordered.*