COMMERCIAL WHARF CORPORATION *vs.* CITY OF BOSTON.
SAME *vs.* SAME.

Suffolk.     January 17, 1907. — February 28, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Landlord and Tenant. Municipal Corporations. Evidence,* Presumptions and burden of proof, Of occupation, Self serving acts. *Maxims, Omnia rite esse acta praesumuntur.*

A wharf corporation made a lease to a city of the right to use a part of its dock and flats "for a public float and landing place for boats." and "the right to drive, cap and maintain four oak piles, one at each corner of said float, to keep the same in position ; also the right to build a platform " from one side of the pier " and a run or other suitable approach from said platform to said float, and to drive such piles as may be necessary in building said platform and approach." The city did all of these things. The lease contained a covenant by the city binding it to pay rent at the rate stipulated in the lease for such further time as it should hold the premises or any part thereof after the term of the lease or any extension of that term had expired. An extension of the term of the lease expired on December 1, 1901. In November, 1898, the city removed the float for repairs, and it never was brought back, but all the other structures erected by the city remained, as did also a notice purporting to be signed by the superintendent of streets reading " City of Boston Public Landing. Boats not allowed to tie up here." No notice of abandonment of the leased premises was given by the city. On August 6, 1903, the mayor sent a letter to the wharf company notifying it that at the end of the quarter which should begin next after that date the city would quit and deliver up the premises theretofore used by it for a float and landing place. Later the wharf company brought an action of contract on the covenants of the lease for the rent from March 1, 1903, to December 1, 1903. The plaintiff offered in evidence the letter of the mayor mentioned above which was excluded by the judge. The plaintiff also, for the purpose of showing that payments of rent were made by the defendant after the expiration of the extension of the lease up to April, 1903, offered in evidence entries in a book kept by the plaintiff's deceased wharfinger containing declarations to that effect. This evidence was excluded by the judge on the ground that no authority from the city to make the alleged payments had been shown. The judge also excluded evidence offered by the plaintiff to show that between December 1, 1901, and December 1, 1903, it made no charge for landing on the platform constructed by the defendant under the lease, although it made a charge after the last named date and made charges for a similar use of other parts of the wharf. The judge ordered a verdict for the defendant. *Held,* that the removal of the float for repairs by the defendant in November, 1898, did not constitute an abandonment of the premises; that the letter of the mayor should have been admitted in evidence as tending to show that the defendant was holding over when the letter was written; that in connection with other evidence it was competent for the plaintiff to show that it had recognized the alleged occupation of the defendant by refraining from making any charge for landing upon the platform ; that

the entries in the books of the deceased wharfinger should have been admitted in evidence, as in the absence of evidence to the contrary it would be presumed that the payments stated in the entries were made with authority; and that the liability of the defendant depended on whether it had occupied any part of the leased premises during the period sued for, which was a question of fact for the jury.

The acts of a public official are presumed to have been done rightly until the contrary is shown.

On the issue whether a city has surrendered certain leased premises on the termination of a lease or has continued to occupy them so as to be liable on a covenant to pay rent during such occupation, the liability of the city is to be determined as that of any citizen would be.

TWO ACTIONS OF CONTRACT against the city of Boston for rent alleged to be due under a covenant in a lease from the plaintiff to the defendant dated November 30, 1891, the first action for $250 as rent for the quarter from March 1 to June 1, 1903, and the second action for $500 as rent for the two quarters from June 1 to December 1, 1903. Writs in the Municipal Court of the City of Boston dated August 17 and December 14, 1903.

On appeal to the Superior Court the cases were tried together before *Hardy*, J. The evidence disclosed the following facts:

On June 24, 1891, the following order was passed by the city council and approved by the mayor: " Ordered, That the board of health be hereby authorized to lease for a term of five years from the Commercial Wharf Corporation a location for a boat landing at a cost not to exceed one thousand dollars per annum, the amount to be charged to the appropriation for city council, incidental expenses."

Acting under this order the plaintiff and the defendant executed a lease dated November 30, 1891, for the term of five years beginning with December 1, 1896, whereby the plaintiff leased to the defendant

" The right to use for a public float and landing place for boats a certain parcel of flats and dock lying between the north and south piers of Commercial Wharf in said Boston ; said parcel is to be not larger than is necessary for a float and landing place thirty by fifty feet in size, and the west end thereof is to be fourteen feet east of the club house now at the head of said dock; also the right to drive, cap and maintain four oak piles, one at each corner of said float, to keep the same in posi-

tion; also the right to build a platform from the south side of said north pier, and a run or other suitable approach from said platform to said float, and to drive such piles as may be necessary in building said platform and approach.

" All of said work is to be done in such a manner as the superintendent of streets of said city may deem advisable; and the lessor agrees to keep open twenty-five (25) feet in width of the dock as a passageway from the outer end of the dock to said float, and that all persons desiring to use said float shall have the right at all times to pass from Atlantic Avenue to the leased premises, for the purpose of using the same as a public float or landing place."

The lease also contained the following covenants :

" And said lessor agrees that said city may, within two months from the expiration of this lease, remove all piles, floats, platforms, approaches and other erections, placed and used by it in connection with said public float and landing place as aforesaid.

" And said lessee hereby covenants and promises with and to the said lessor, its successors and assigns, that it will, during the said term and for such further time as said lessee, or any other person or persons claiming under it, shall hold the said premises, or any part thereof, pay unto the lessor, its successors or assigns, the said yearly rent upon the days hereinbefore appointed for the payment of the same. . . .

" It is agreed that this lease shall terminate within said term whenever the appropriation for said purpose is insufficient to meet the expense thereof, upon notice to the lessor from the superintendent of streets of said city of such insufficiency."

Acting under this lease the defendant entered into the premises and constructed and maintained the float, piles and platform therein referred to.

On November 30, 1896, the city council passed an order authorizing a renewal of this lease for five years, and in March, 1897, the following extension of the lease was executed by the plaintiff and the defendant :

" The within lease is hereby extended for the term of five years from December 1, 1896, subject to the like rent payable in like manner as within mentioned, and to all the provisos

covenants and agreements within contained — and thereto the undersigned parties to the said lease mutually bind themselves.

" Boston, March, 1897."

In November, 1898, the float was damaged and was taken away by the defendant for repairs and never was brought back.

One Corea, called as a witness on behalf of the plaintiff, testified in substance that he was employed by the plaintiff as outside man in charge of the wharf and as special officer on its premises, and had been so employed since April, 1896; that, when he first came to the wharf, there was a float about thirty by forty feet in size and so constructed that it would rise and fall with the tide, maintained for a landing, with a flight of steps leading to the platform on the wharf; that at the time of the big storm about Thanksgiving, 1898, which wrecked the Portland, the float was damaged and was towed off and never was brought back; that from that time the only way any person could land there from small boats or crafts was by bringing a ladder with them or climbing up a slimy pile if it was low water, but at high water they could jump on to the wharf; that the tide rose and fell at that point from eight to ten feet; that the piles of the wharf were from about ten inches to a foot in diameter.

He further testified that between December 1, 1901, and December 1, 1903, he had seen boats land there with junk, had seen parties land there from launches, and that boats made the same use of the landing that they did when there was a float there.

The counsel for the plaintiff then asked the witness whether or not any charge was made for landing on the platform between December 1, 1901, and December 1, 1903, and also whether any charge was made after December 1, 1903. These questions were asked for the purpose of bringing out evidence to show that the plaintiff acknowledged the city's right in the premises and did not charge for landing on the part of the wharf described in the lease to the defendant until after December 1, 1903, but did charge after that, and that charges always were made for similar use of other parts of the wharf. The judge excluded the evidence and the plaintiff excepted.

The plaintiff then called as a witness one Ballard, who testified that he had been in the employ of the plaintiff since the

middle of April, 1902, first as bookkeeper and then as assistant wharfinger in charge of the premises, after the death of the previous wharfinger, one White, who died on April 3, 1905.

The counsel for the plaintiff then offered in evidence the ledger and cash book of the plaintiff kept by the witness and by White in the usual course of business. These books were not objected to as such, and counsel then offered to show from them payments of $250 each for rent, made by the defendant to White, the wharfinger, on March 12, 1902, August 12, 1902, October 16, 1902, January 13, 1903, April 11, 1903, and April 13, 1903.

These payments were offered as evidence of a holding over by the defendant under the covenants of the lease, and it was ruled by the judge that no authority to make the payments having been shown they were not admissible. To this ruling the plaintiff excepted.

The counsel for the plaintiff then offered in evidence the following letters which were properly identified by the witness :

"August 6, 1903.

" To the Commercial Wharf Company, a corporation duly established under the laws of Massachusetts.

" You are hereby notified that the city of Boston will, at the end of that quarter which shall begin next after this date, quit and deliver up premises on Commercial Wharf and dock, east of Atlantic Avenue in said city, heretofore used by said city for a float and public landing place.

" City of Boston,
by Patrick A. Collins, Mayor."

"August 6, 1903.

" To the Commercial Wharf Company, a corporation duly established under the laws of Massachusetts.

" You are hereby notified that the lease from your corporation to the city of Boston, dated November 30, 1891 and extended March 1897 for the term of five years from December 1, 1896, of the right to use certain floats, flats and dock between the north and south piers of Commercial Wharf in said Boston terminated at the expiration of said extended term ; provided it is legally necessary so to do said lease and all liability of the city

of Boston thereunder or for or on account of the premises therein described is hereby terminated in accordance with the provisions of said lease, the appropriation for said purpose being insufficient to meet the expense thereof.

" Very truly,

James Donovan,

Supt. of Streets of the City of Boston."

" August 6, 1903.

" To the Commercial Wharf Company, a corporation duly established under the laws of Massachusetts.

" You are hereby notified that the lease from your corporation to the city of Boston, dated November 30, 1891 and extended March 1897 for the term of five years from December 1, 1896, of the right to use certain floats, flats and dock between the north and south piers of Commercial Wharf .in said Boston terminated at the expiration of said extended term.  The city of Boston denies all liability to you for rent or otherwise since December 1, 1901, and hereby requests that you repay to the city all amounts paid you for said premises by said city, the same having been made under a mistake of one of the city departments and without legal authority.

" Very truly,

Patrick A. Collins,

Mayor of the City of Boston."

Each of the foregoing three letters was written on paper with the heading " City of Boston, Law Department, 73 Tremont Street, Boston, Tremont Building, Rooms 730–740."

The judge ruled that no authority to send these notices having been shown the notices were not admissible.  To this ruling the plaintiff excepted.

The plaintiff then asked for certain rulings, twelve in number, which were refused by the judge, but the questions raised by such refusals were not considered by the court because the case was disposed of on other exceptions.

The judge ordered the jury to return a verdict for the defendant in each of the cases.  The jury returned verdicts for the defendant as directed; and the plaintiff alleged exceptions.

*B. E. Eames,* for the plaintiff.

*S. M. Child,* for the defendant.

SHELDON, J. No question seems to have been made but that the lease and the extension for five years from December 1, 1896, were duly executed and became binding upon the defendant. Nor was there any dispute that for any occupation of the whole or a part of the leased premises after the term of the lease, as extended, had expired, the defendant would be liable to pay rent at the rate stipulated in the lease. The question at issue was whether there had been such occupation. The defendant contends that it had abandoned the premises in November, 1898, by removing the landing float, and in no way had occupied them since that time.

The property leased to the defendant was the right to use a certain part of the plaintiff's dock and flats " for a public float and landing place for boats," and the " right to drive, cap and maintain four oak piles, one at each corner of said float, to keep the same in position; also the right to build a platform " from one side of the pier " and a run or other suitable approach " from the platform to the float, " and to drive such piles as may be necessary in building " the platform and approach. The defendant did all these things.

The mere removal of the float by the defendant in November, 1898, for repairs, all its other erections having been left there, did not constitute an abandonment, even though it never was brought back. Nor was anything further done upon the expiration of the extended term, December 1, 1901. The other erections made by the defendant were not removed, and apparently were still in position until the end of the period sued for. There also was evidence that the defendant had put a notice upon the premises, purporting to be signed by the superintendent of streets, reading, " City of Boston Public Landing. Boats not allowed to tie up here "; and that this remained in position until after the expiration of the period sued for. No notice of any kind was given by the defendant of its abandonment of the leased premises. It is true that no notice was required to terminate the tenancy at the expiration of the lease; but in view of the other facts of the case this failure to give notice might have some significance. Under these circumstances we are of opinion that the plaintiff should have been allowed, if it could do so, to show the declarations of White, its deceased wharfinger, contained in

entries in the books kept by him, that payments of rent for these premises had been made by the defendant after the expiration of the lease up to April, 1903. The books which were offered to show these declarations were not objected to as such ; and they appear to have been excluded simply because no authority from the city to make the alleged payments had been shown. But the offer was to show that the payments were made by the city ; the contents of the books are not before us; and we cannot suppose that the payments purporting to be made were made through merely inferior officers of the defendant city. If made by the mayor and treasurer, or either of them, the presumption *omnia rite esse acta* would apply. *Washington National Bank* v. *Williams*, 190 Mass. 497. The mayor is the chief executive officer of the city. *Nichols* v. *Boston*, 98 Mass. 39. The treasurer is the person charged with its financial affairs and the responsibility for its moneys. Apparently the whole matter of this lease and its extensions had been attended to from the beginning by the mayor ; and evidence of his actions in the matter was *prima facie* competent. *Davies* v. *Mayor of New York*, 93 N. Y. 250. Such evidence was received and acted upon against the same objection in *St. Louis Gas Light Co.* v. *St. Louis*, 11 Mo. App. 55, 74, 75, upon the presumption of right acting which attends the conduct of every person in an official station until the contrary is shown. *Read* v. *Sutton*, 2 Cush. 115. *Bank of the United States* v. *Dandridge*, 12 Wheat. 64, 69, 70. *United States* v. *Adams*, 24 Fed. Rep. 348. *Mandeville* v. *Reynolds*, 68 N. Y. 528, 534.

It must be remembered that this is a question of merely private right, in which no governmental function is to be dealt with, and the liability of the defendant is to be determined, as that of any citizen would be, by the contract which it has made. *Boston Molasses Co.* v. *Commonwealth*, 193 Mass. 387. *Chicago* v. *Sexton*, 115 Ill. 230. It is not denied that if such payments were made after the term of the extended lease had expired this would furnish some evidence of a holding over by the defendant; and there was no assertion of any act of abandonment or surrender during the period sued for after the time covered by the payments.

For the same reasons, the letter written by the mayor, dated

August 6, 1903, should have been admitted. It was of course open to explanation ; but it tended to show that the city was holding over when the letter was written. *Blanchard* v. *Blackstone,* 102 Mass. 343, 348. *O'Leary* v. *Board of Education,* 93 N. Y. 1. 1 Dillon, Mun. Corp. (4th ed.) § 305, note. In connection with the other evidence, it was competent for the plaintiff to show that it had recognized the alleged occupation of the city by refraining from making any charge for landing upon the platform constructed by the city under the lease.

It is not necessary to consider the requests for rulings in detail. The liability of the defendant depended upon whether it actually had occupied any part of the leased premises during the period sued for; and this presents a question of fact to be determined by the jury.

*Exceptions sustained.*