COMMERCIAL WHARF CORPORATION *vs.* CITY OF BOSTON.
SAME *vs.* SAME.

Suffolk.    January 26, 1911. — April 4, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Landlord and Tenant. Boston. Municipal Corporations,* Officers and agents. *Notice. Landing Place. Contract,* Implied in fact.

A vote of the city council of Boston in 1891, authorizing the board of health to lease from the owner of a certain wharf "a location for a boat landing," and a further vote of the council in 1896, authorizing the board of health to extend a lease made in accordance with the previous vote, the rental "to be charged to the appropriation for city council incidental expenses," were inoperative and void,

being contrary to the provisions of St. 1885, c. 266, § 12, in force at the time, that the council should not "directly or indirectly take part in the employment of labor, the making of contracts, the purchase of materials or supplies, the construction, alteration or repair of any public works, buildings or other property, or the care, custody and management of the same, or in the conduct of any of the executive or administrative business of the city, or in the expenditure of public money, except such as may be necessary for the contingent and incidental expenses of the city council or of either branch thereof."

The mayor of Boston in 1891 had no power, either under St. 1885, c. 266, § 6, or under St. 1890, c. 418, § 6, to execute on behalf of the city a covenant to pay rent contained in a lease to the city from the owner of a wharf of a landing place thereon, which the city council, contrary to the provisions of St. 1885, c. 266, § 12, had voted to authorize the board of health to lease, and such a covenant, contained in a lease made in accordance with such a vote and executed and delivered on behalf of the city by the mayor, is inoperative and void, as also is an extension thereof to a period in 1901; and such invalid acts are not made valid by payments by the city of rent under the covenant in accordance with votes of the city council attempting to authorize such payments from an appropriation made for incidental expenses of the council, such payments being unlawful, nor by acts of subsequent mayors which, if such mayors had had power to execute the lease on behalf of the city, would have amounted to ratification of the lease and its extension.

Where one is invited or seeks to make a certain contract with a municipal corporation, he is chargeable with knowledge of the extent of or lack of authority of the corporation and its various officers and agents to make such a contract.

A new landing place cannot be established or laid out by a city without legislative authority.

Since the city of Boston has no authority to make an express agreement to pay rent for the use and occupation of a landing place upon a wharf of a private person, which it does not use for purposes of pecuniary gain, benefit or advantage or in performance of some public duty enjoined upon it by statute, it is not liable, after an occupation by it of such a landing place with the owner's permission for nine months, in an action upon an account annexed for use and occupation, since as matter of law the city cannot be made liable upon an implied contract to pay for what it had no power to make an express contract to pay for.

TWO ACTIONS OF CONTRACT, each with a declaration, as amended, containing two counts, the first count being upon a covenant to pay rent for certain premises in Boston for a certain period of time, and the second count being for use and occupation of the same premises for the same period of time. The declarations each stated that both of the counts were for the same cause of action. The period covered by the first action was from March 1, 1903, to June 1, 1903, and that covered by the second action was from June 1, 1903, to December 1, 1903. Writs in the Municipal Court of the City of Boston dated respectively August 17 and December 14, 1903.

On appeal to the Superior Court the cases first were tried together before *Hardy*, J., upon declarations containing only the first counts. Exceptions by the plaintiff to a ruling of the presiding judge ordering verdicts for the defendant were sustained by this court in a decision reported in 194 Mass. 460, where the facts, most of which are not material to an understanding of the present decision, are stated fully.

There was a second trial of the cases before *Pierce*, J., after the declarations had been amended by adding the second counts. The original lease to the defendant was executed on November 30, 1891, and was for a term of five years. A renewal was executed in 1906 for five years more. Quarterly payments of the amount specified in the lease as rent were made to the plaintiff by the defendant to April 13, 1903. Other material facts are stated in the opinion.

St. 1885, c. 266, § 6, as amended by St. 1889, c. 320, is as follows: " The executive powers of said city [of Boston], and all the executive powers now vested in the board of aldermen, as such, as surveyors of highways, county commissioners or otherwise, shall be and hereby are vested in the mayor, to be exercised through the several officers and boards of the city in their respective departments, under his general supervision and control. Such officers and boards shall, in their respective departments, make all necessary contracts for the employment of labor, the supply of materials, and the construction, alteration and repair of all public works and buildings, and have the entire care, custody and management of all public works, institutions, buildings and other property, and the direction and control of all the executive and administrative business of said city. They shall be at all times accountable for the proper discharge of their duties to the mayor, as the chief executive officer, whose duty it shall be to secure the honest, efficient and economical conduct of the entire executive and administrative business of the city, and the harmonious and concerted action of the different departments. Every contract made as aforesaid in which the amount involved exceeds two thousand dollars shall require the approval of the mayor before going into effect; and no expenditure shall be made nor liability incurred for any purpose beyond the appropriation duly made therefor, except that at the beginning of the financial year,

to meet the liabilities of the several departments incurred in the carrying on of the work entrusted to them, until the city government shall otherwise order, expenditures may be made, liabilities may be incurred and payments made from the treasury from any funds therein, and the treasurer may borrow money in anticipation of taxes to provide funds. Such expenditures and liabilities shall not exceed for each department, one-third the entire amount appropriated for the department the previous year, and shall be considered and reckoned as a part of the expenditures of, and the money paid therefor as a part of the appropriations for, the current financial year."

Section 12 of the same chapter is as follows: "Neither the city council nor either branch thereof, nor any member or committee thereof or of either branch thereof, nor the board of aldermen acting in any capacity in which said board may act separately under special powers conferred upon it, nor any member or committee of said board acting in any such capacity, shall directly or indirectly take part in the employment of labor, the making of contracts, the purchase of materials or supplies, the construction, alteration or repair of any public works, buildings or other property, or the care, custody and management of the same, or in the conduct of any of the executive or administrative business of the city, or in the expenditure of public money, except such as may be necessary for the contingent and incidental expenses of the city council or of either branch thereof, nor, except as is otherwise provided in sections one and two, in the appointment or removal of any officers or subordinates for whose appointment and removal provision is hereinbefore made; but nothing in this section contained shall affect the powers or duties of the board of aldermen in relation to state aid to disabled soldiers and sailors, and to the families of those killed in the civil war."

St. 1890, c. 418, § 6, is as follows: "All contracts made by any department of the city of Boston shall, when the amount involved is two thousand dollars or more, be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor in writing is affixed thereto. All such contracts shall be accompanied by a suitable bond or deposit of money or other security for the faithful performance

of such contracts, and such bonds or other security shall be deposited with the city auditor until the contract has been carried out in all respects; and no such contract shall be altered except by a written agreement of the contractor, the sureties on his or their bond, and the officer or board making the contract, with the approval of the mayor affixed thereto."

At the close of the evidence, the defendant asked the presiding judge to give the following rulings, among others:

"1. Upon all the evidence the plaintiff is not entitled to recover in either action."

"3. The defendant was not required to give notice of any kind to the plaintiff in order to terminate the tenancy."

"7. There is no evidence in these cases which would warrant the jury in finding that the defendant became at any time after the expiration of the lease a tenant at will of the leased premises and consequently no notice was necessary from the defendant to the plaintiff to terminate the tenancy."

The judge refused to rule as requested, and submitted to the jury three questions, which they answered as follows:

1. Q. "Did the defendant make use of or occupy the premises of the plaintiff as a public landing place between March 1, 1903, and June 1, 1903?" A. "Yes."

2. Q. "Did the defendant make use of or occupy the premises of the plaintiff as a public landing place between June 1, 1903, and December 1, 1903?" A. "Yes."

3. Q. "Did the plaintiff and defendant, at any time between December 1, 1901, and December 1, 1903, agree by reason of the facts and circumstances in the testimony the one to hold and the other to permit to be held the possession, use or enjoyment of the premises as a public landing place?" A. "Yes."

The jury found for the plaintiff in both actions; and the defendant alleged exceptions.

*J. D. McLaughlin,* for the defendant.

*B. E. Eames, (C. W. Hood* with him,) for the plaintiff.

BRALEY, J. It was said upon exceptions taken by the plaintiff at the first trial of these cases, after a verdict had been ordered for the defendant, that "no question seems to have been made but the lease and the extension for five years from December 1, 1896, were duly executed and became binding

upon the defendant. Nor was there any dispute that for any occupation of the whole or a part of the leased premises after the term of the lease, as extended, had expired, the defendant would be liable to pay rent at the rate stipulated in the lease. The question at issue was whether there had been such occupation," and it was decided that " the liability of the defendant depended upon whether it actually had occupied any part of the leased premises during the period sued for; and this presents a question of fact to be determined by the jury." *Commercial Wharf Co.* v. *Boston*, 194 Mass. 460, 466, 468. The cases are now before us on the defendant's exceptions after verdicts for the plaintiff at the second trial, upon the original declaration counting on the covenant in the lease, that the defendant should pay rent at the same rate for such further time as it should hold the premises after the lease expired, and upon the amended declaration with a count for use and occupation during the periods in dispute.

It being alleged that both counts are for the same cause of action, they are inconsistent. If the defendant held over without any further agreement, it was a tenant at sufferance, and would be liable for the rent at the rate reserved in the lease, until the premises were vacated. R. L. c. 129, § 3. *Edwards* v. *Hale*, 9 Allen, 462. *Warren* v. *Lyons*, 152 Mass. 310. *Benton* v. *Williams*, 202 Mass. 189. The distinction between an action on a covenant of this nature, and on an implied contract creating a tenancy at will where the occupation continues beyond the term is stated in *Leavitt* v. *Maykel*, 203 Mass. 506, 510. See *Mullaly* v. *Austin*, 97 Mass. 30, 33. But no request was made, that the plaintiff be required to elect, and if the evidence supports either count, the general verdict will stand, and judgment may be entered on that count. *Brown* v. *Woodbury*, 183 Mass. 279. *West* v. *Platt*, 127 Mass. 367, 371.

The defendant's request for rulings, that upon all the evidence the plaintiff was not entitled to recover, and that the jury would not be warranted in finding that it was a tenant at will, having been denied, the city contends, that as a municipal corporation whose powers were defined by statute, it was not bound by either the lease, or the agreement of extension, and that the evidence was insufficient to justify the finding of its occupancy of the premises, or, if sufficient, it is not responsible under an

implied agreement to pay for use and occupation. The former opinion did not discuss or determine these questions. We take them up for decision in the order stated.

The votes of the city council " authorized " the board of health to lease the premises as "a location for a boat landing," and when the original lease was about to expire to renew the lease for a further term, the rental " to be charged to the appropriation for city council incidental expenses." But the lease and agreement of extension were not signed by the board, and on the face of the instrument, the city never became obligated unless bound by the mayor's execution of the contracts in its behalf. The mayor acted under the votes. If the first vote was invalid, the second falls with it. The St. of 1885, c. 266, § 12, relating to the chartered powers of the defendant, and in force when the votes were passed, contains this provision: The city council shall not ". . . directly or indirectly take part in the employment of labor, the making of contracts, the purchase of materials or supplies, the construction, alteration or repair of any public works, buildings or other property, or the care, custody and management of the same, or in the conduct of any of the executive or administrative business of the city, or in the expenditure of public money, except such as may be necessary for the contingent and incidental expenses of the city council or of either branch thereof. . . ." The board of health alone under § 6 had authority to make the necessary contracts, required in the proper management of the health department. If under St. of 1890, c. 418, § 6, where the expenditure involved equals a certain amount, the mayor's approval in writing must be obtained or the contract is not valid, the mayor's power to act is limited to contracts which originate with the departments, the proper discharge of whose administrative functions renders the contract advisable or necessary. By St. 1885, c. 266, § 12, the city council was not a department within the purview of the statute, and could not make contracts. The original execution of the lease, and the indorsement on the lease of the extension of the term, by the respective mayors who held office at the time, were inoperative and void. The appropriation, moreover, was provided for its own incidental expenses as a distinct municipal body. It could not annually be increased for a purpose wholly

foreign, by adding the amount of the yearly rent to accrue under the lease, or lawfully be transferred and diverted to the board of health to be spent not for the preservation of the health of the community, but as the evidence shows, for the accommodation of the general public. *Hennessey* v. *New Bedford*, 153 Mass. 260.

Nor were the payments of rent until the prolonged term expired and at a similar rate for some six months thereafter, or the notices of the mayor that the lease had terminated and that the premises would be vacated and surrendered, proof of ratification. The money paid was illegally disbursed, and the mayor, having no original authority to make the contracts, could not subsequently give them life by his official recognition. St. 1885, c. 266, §§ 6, 12. *Nelson* v. *Georgetown*, 190 Mass. 225, 229. *Revere Water Co.* v. *Winthrop*, 192 Mass. 455, 462.

It is put beyond question under our decisions, that parties who are invited, or seek to enter into contractual relations with a municipal corporation cannot if the contract is made, plead want of knowledge of such statutory limitations in avoidance, and the plaintiff, having been charged with notice of the invalidity of the lease, cannot recover on the covenant. *Adams* v. *Essex*, 205 Mass. 189, 197.

We assume the evidence warranted the special findings of the jury so far as they were applicable to the second count, that with the plaintiff's permission the defendant, after the expiration of the prolonged term, occupied the premises during the months sued for, and the instructions as to the essential elements of a tenancy at will, which the plaintiff must prove in order to recover, were unexceptionable. *Rice* v. *Loomis*, 139 Mass. 302. *Commercial Wharf Co.* v. *Boston*, 194 Mass. 460. A tenancy at will, however, rests upon an express or implied contract. *Knowles* v. *Hull*, 99 Mass. 562, 565. And our attention has not been called to any general law, or special provision of the defendant's charter, authorizing the city to expend any portion of the revenue raised by taxation, to procure or to maintain a location for a boat landing. "Landing places," said Chief Justice Parker, in *Kean* v. *Stetson*, 5 Pick. 492, 495, "have in some towns existed by immemorial usage on the banks, and perhaps on the shores of creeks or rivers, but towns have

no right to create them either as such, or under the pretense of laying out a way," and new landing places cannot be established or laid out without legislative authority. *Commonwealth* v. *Tucker,* 2 Pick. 44. *Winslow* v. *Gifford,* 6 Cush. 327. *Bennett* v. *Clemence,* 6 Allen, 10. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 527. If the city's occupation had conferred upon it some pecuniary gain, benefit or advantage, or was in performance of some public duty enjoined by statute, it could be held under the implied contract upon which the plaintiff must rely. *Spaulding* v. *Peabody,* 153 Mass. 129. *Dickinson* v. *Boston,* 188 Mass. 595, 599. *Douglas* v. *Lowell,* 194 Mass. 268. *Capron* v. *Taunton,* 196 Mass. 41, 44. But there is no evidence that the premises were required for any general or special municipal use or were provided for or occupied by any of the various departments of the city, and it was not within the power of the defendant to expend its income for a purpose not authorized by statute. *Cavanagh* v. *Boston,* 139 Mass. 426. *Bartlett* v. *Lowell,* 201 Mass. 151.

The first request should have been given and the exceptions must be sustained, but as the plaintiff manifestly has no cause of action, judgment is to be entered for the defendant under St. 1909, c. 236.

*So ordered.*