WILLIAM H. SULLIVAN *vs.* MARY L. MANDELL & another.

Suffolk.    April 1, 1912. — May 24, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Sewer.   Boston.*

Under St. 1897, c. 426, §§ 2, 4, St. 1903, c. 268, the construction of a sewer in the city of Boston can be authorized only by the board of street commissioners with the approval of the mayor, and the superintendent of sewers of that city acting under direction of the mayor has no authority to construct a sewer not authorized by the board| of street commissioners. A ʃsubsequent assessment by that board of betterments for a sewer so constructed does not operate as a ratification of acts originally unlawful and is void.

CONTRACT for the alleged breach of covenants of warranty and against incumbrances in a deed from the defendants dated and delivered on March 8, 1908, conveying to the plaintiff a certain lot of land in that part of Boston called Dorchester. Writ dated February 1, 1911.

In the Superior Court the case was tried before *McLaughlin,* J. The incumbrance complained of was a sewer assessment levied by a vote of the board of street commissioners of the city of Boston on December 8, 1908.

The plaintiff, subject to the defendants' exception, put in evidence a certified copy of the following notice recorded in the registry of deeds on the day of its date:

"City of Boston.       Sewer Department.    Nov. 28, 1906.

"The undersigned, the Superintendent of Sewers of the City of Boston, hereby states that it is his intention to construct a house sewer of 12 inch earthen pipe in Morton Street from Blue Hill Avenue about 410 feet westerly in the Dorchester District, and that he estimates that the cost thereof will be fourteen hundred and forty-five ($1,445.00) dollars. John J. Leahy, Superintendent of Sewer Department of the City of Boston. Approved John F. Fitzgerald, Mayor."

There was evidence that John J. Leahy, superintendent of sewers, was the officer designated by the mayor under St. 1903, c. 268, to construct sewers, and that after the filing of the notice

he constructed a house sewer in Morton Street in front of the land conveyed by the defendants to the plaintiff; that work on the sewer was completed on January 31, 1907, and that on December 8, 1908, the superintendent of sewers certified the cost of the sewer to the board of street commissioners, who on the same day passed an order assessing a portion of the cost of the sewer upon the land in question.

It was admitted that there was no order of the board of street commissioners ordering the construction of the sewer or any order by that board in connection therewith before the order levying the assessment on December 8, 1908.

The defendants asked the judge to make the following rulings:

"1. On all the evidence the plaintiff cannot recover, and the verdict must be for the defendants.

"2. Neither the superintendent of sewers of the city of Boston nor any other official designated by the mayor of said city, has any authority to construct a sewer in said city and assess any part of the cost therefor on adjoining property, without a previous adjudication by the board of street commissioners of said city adjudging said sewer necessary for the public convenience or the public health.

"3. The notice of intention to construct a sewer in Morton Street, dated November 28, 1906, signed by John J. Leahy, superintendent of sewers of the city of Boston, recorded with Suffolk Deeds, Book 3172, 464, did not impose any lien or liability for assessment on the property deeded by the defendant to the plaintiff, as there was no order of the street commissioners of the city of Boston adjudging that said sewer was necessary for the public convenience or the public health."

The judge refused to make any of these rulings, and ordered judgment for the plaintiff. The defendants alleged exceptions.

The case was submitted on briefs.

*S. M. Child & H. D. Moore,* for the defendants.

*C. W. Rowley,* for the plaintiff.

BRALEY, J. By St. 1841, c. 115, the mayor and aldermen of the city of Boston were empowered, upon acceptance of the act, to lay, make and repair as public necessity and convenience might demand all main drains or common sewers within the municipality, which upon construction "shall be taken and deemed to

be the property of such town or city." The statute having been accepted, the board whenever it adjudicated that a sewer was necessary could apportion and assess the cost of construction upon the proprietor of a particular drain which entered into the sewer either "for the draining of his cellar or land, or in obedience to the . . . ordinances of . . . the city, or who, by any more remote means, shall receive any benefit thereby for draining his cellar or land," and the assessment constituted a lien upon the estate for one year after it was laid. St. 1841, c. 115, §§ 2, 3. *Child* v. *Boston,* 4 Allen, 41, 48.

In the expansion and development of the city additional authority was required, and by the St. of 1857, c. 225, the board of aldermen were authorized to construct sewers through the land of any persons or corporations "as they shall adjudge to be necessary for the public convenience or the public health," and damages were to be assessed and recovered in the manner prescribed where land was taken "for public highways or streets." A further enlargement appears in the St. of 1873, c. 205, § 1, which provided, that "the board of aldermen of the city of Boston may for the purposes of sewerage and drainage, take and divert the water of any streams or water courses within the limits of said city, and devote the same to the purposes aforesaid; and may take all necessary land to widen, deepen or straighten the channel of such water courses, and pave, enclose and cover the same." And the St. of 1882, c. 164, having enacted that the words "mayor and aldermen" were to be construed as meaning "board of aldermen" this body until the St. of 1897, c. 426 was passed, continued to be invested with the plenary and exclusive powers conferred by these statutes. Gen. Sts. c. 48, §§ 1–3. St. 1869, c. 111. Pub. Sts. c. 50, § 1. St. 1892, c. 402. *Allen* v. *Boston,* 159 Mass. 324, 336. *Bowditch* v. *Boston,* 168 Mass. 239. *Weed* v. *Boston,* 172 Mass. 28. *Gray* v. *Aldermen of Boston,* 139 Mass. 328.

But a radical change followed upon the enactment of St. 1897, c. 426, §§ 2, 3, 7. The board of street commissioners, which had been established by the St. of 1870, c. 337, and given the powers then exercised by the board of aldermen in the laying out and discontinuance of streets and ways, were thereafter to have full authority to order the construction of all public sewers, and to assess betterments, even if under the St. of 1891, c. 323, §§ 8, 10,

when ordering the location, laying out and construction of highways in accordance with the plans of a board of survey created by that statute, authority to include "the laying out of a trunk sewer . . . as engineering demands shall require" seems to have been granted. *Warren* v. *Street Commissioners*, 181 Mass. 6, 7. See also St. 1894, c. 416, §§ 2, 3; St. 1902, c. 521; St. 1906, c. 393, § 9.

It may be that in the absence of definitive legislative revision and consolidation of the great number of special acts governing the construction of public ways and sewers in the city, and relating to the authority of the officers charged with the supervision of the various municipal departments, there are seemingly inconsistent or contradictory expressions, when the attempt is made to construe them for the purpose of formulating a comprehensive and clear system of municipal administration. See Sts. 1885, c. 266; 1890, c. 418; 1891, c. 323; 1892, c. 402; 1894, c. 416, §§ 2, 3; 1895, c. 449, § 23; 1896, c. 204; 1897, c. 426; 1899, c. 450, § 3; 1902, c. 521; 1903, c. 268; 1906, c. 393. *Ryan* v. *Boston*, 204 Mass. 456. *Commercial Wharf Co.* v. *Boston*, 194 Mass. 460; *S. C.* 208 Mass. 482. Yet, the intention of the Legislature as expressed in the St. of 1897, c. 426, being unambiguous, the board of street commissioners were invested with the powers formerly exercised by the aldermen, and after the passage of this act a public sewer could not be ordered or built except upon their adjudication with the approval of the mayor. The commissioners under § 2, and not the mayor are first to decide whether a sewer shall be located and constructed, and if the approval of the mayor follows, then upon completion, the just and equitable charges for construction are to be assessed by the commissioners upon all estates specially benefited, while if he does not approve, their order is inoperative. Nor did the amendatory act of 1903, c. 268, which the plaintiff contends supports the validity of the assessment, abridge their authority. It is only after his approval, and the sewer is to be built, that the mayor under St. 1897, c. 426, § 4, as amended by St. 1903, c. 268, § 1, is to designate the superintendent of streets or such other officer as he may select to enter upon the work of construction. But whoever is designated he is to carry out and execute the order of the board of commissioners. St. 1897, c. 426, § 4. St. 1903, § 268, § 2. Although before the

work is begun the officer thus chosen must record in the registry of deeds for the county, a statement approved by the mayor of his intention to construct the sewer, naming the street or describing the land where it is to be constructed, with his estimate of the cost, this provision only becomes applicable when the commissioners, with the mayor's approval, have decided, that the sewer shall be built.

The construction of a sewer in the street upon which the land now owned by the plaintiff abutted having been undertaken by the mayor and superintendent of sewers without any adjudication or order of the commissioners, was unlawful and the subsequent assessment of betterments cannot cure the omission. The right to assess, and if necessary to collect by sale of the property a betterment tax, depended upon a strict compliance with the statute. *Abbott* v. *Frost,* 185 Mass. 398. *Draper* v. *Mayor of Fall River,* 185 Mass. 142. *Commercial Wharf Co.* v. *Boston,* 208 Mass. 482. And as the jurisdictional powers of the board could not be delegated their assessment did not operate as a ratification of acts originally invalid. *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381, 382. *Revere Water Co.* v. *Winthrop,* 192 Mass. 455, 462. *Commercial Wharf Co.* v. *Boston,* 208 Mass. 482.

The covenant against incumbrances not having been broken when the deed of the defendants was delivered, the plaintiff has no cause of action. *O'Connell* v. *First Parish in Malden,* 204 Mass. 118. The exceptions therefore must be sustained, and under the St. of 1909, c. 236, judgment is to be entered for the defendants.

*So ordered.*