COMMISSIONER OF CORPORATIONS AND TAXATION vs. CITY
OF MALDEN.

Suffolk.    February 5, 1951. — April 3, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*National Bank.    Taxation,* Distribution of taxes; Corporate franchise
tax; Appellate Tax Board: appeal to board, petition. *Municipal
Corporations,* Officers and agents.

In the absence of evidence to the contrary, it was presumed that a city
regularly authorized a petition signed by its mayor in its behalf on an
appeal under G. L. (Ter. Ed.) c. 58, § 25, as appearing in St. 1945,
c. 687, to the Appellate Tax Board from a decision of the commissioner
of corporations and taxation determining the amount due the city as
its share of certain corporate franchise taxes under § 24, as amended.
A national bank established within the Commonwealth must be classified
as a resident here and not as a "non-resident" for the purposes of
G. L. (Ter. Ed.) c. 58, § 24, as amended, relating to distribution of
certain corporate franchise taxes.

APPEAL from a decision by the Appellate Tax Board.

*F. E. Kelly,* Attorney General, & *C. H. Walters,* Assistant
Attorney General, for the commissioner of corporations and
taxation, submitted a brief.

*B. Kaplan,* City Solicitor, for the city of Malden.

QUA, C.J.    The commissioner appeals under G. L. (Ter.
Ed.) c. 58A, § 13, as most recently amended by St. 1939,
c. 366, § 1, from a decision of the Appellate Tax Board
holding that in the distribution of the corporate franchise
tax assessed upon Malden Electric Company for the year
1948 the city was entitled to receive the sum of $29,485.45
in addition to the sum previously determined by the com-
missioner to be due to the city.  See G. L. (Ter. Ed.) c. 63,
§ 58; c. 58, § 24, as amended by St. 1933, c. 254, § 23; and
c. 58, § 25, as appearing in St. 1945, c. 687.

1. The commissioner filed before the board a motion to
dismiss, which was denied, and now contends that the cause

should be dismissed by this court for want of jurisdiction for the reason that the petition to the board was signed in the name of the city of Malden "By Fred Lamson Mayor" instead of by the city treasurer to whom under G. L. (Ter. Ed.) c. 58, § 25, as amended, the commissioner is required to give notice of the amount distributable. There is, however, nothing in the pertinent statutes which requires that the petition be signed by the treasurer. The language of c. 58, § 25, as appearing in St. 1945, c. 687, is simply that the decision of the commissioner "shall be subject to appeal to the appellate tax board." The charter of Malden, St. 1881, c. 169, § 10, provides in part, "The mayor shall be the chief executive officer of the city. It shall be his duty to be active and vigilant in causing the laws and regulations of the city to be enforced, and to keep a general supervision over the conduct of all subordinate officers." The extensive powers of mayors under this and similar charter provisions are shown by such cases as *Pedrick* v. *Bailey*, 12 Gray, 161, 163, *Nichols* v. *Boston*, 98 Mass. 39, 44, *Rollins* v. *Salem*, 251 Mass. 468, and *Commissioner of Corporations & Taxation* v. *Malden*, 321 Mass. 46, 49. The officer to whom such powers are entrusted would seem to be the natural officer to sign the city's name to a petition of this kind. It would seem that the "error of law" set out by the commissioner in his claim of appeal as required by G. L. (Ter. Ed.) c. 58A, § 13, as amended, is not that the petition was brought without authority from the city, but is rather that the mayor was not "the proper party to sign" it. But even if this is not so, and even if we assume, without deciding, that the mayor needed some authority beyond his own (see *Walpole* v. *Gray*, 11 Allen, 149; *Great Barrington* v. *Gibbons*, 199 Mass. 527, 529), we think that there is a presumption in the absence of evidence to the contrary that this petition which he signed for the city's benefit was regularly authorized by the city. *Commercial Wharf Corp.* v. *Boston*, 194 Mass. 460, 467. *Taylor* v. *United States*, 324 Mass. 639, 646–647. In *Taunton* v. *Taylor*, 116 Mass. 254, where suit was brought at the instance of the board of health, it was said on page

262, "In such a suit, as in any other lawfully brought in the name of the city, the bill may properly be signed by the mayor."

2. We now come to the merits. Under G. L. (Ter. Ed.) c. 58, § 24, as amended, the corporate franchise taxes paid by gas, electric light, gas and electric light, and water companies are retained by the Commonwealth in proportion to the amount of stock owned by "non-residents," and the remainder is distributed to the municipalities where the businesses are carried on. A very large majority of the stock of Malden Electric Company was held by The First National Bank of Boston "as trustee of the New England Electric System." For the purposes of the statute the trustee was the owner of this stock. *Commissioner of Corporations & Taxation* v. *Springfield*, 321 Mass. 31, 40–43. The real issue is whether under § 24, as amended, a national bank established within this Commonwealth is a nonresident. If it is not, the city is entitled to the further distribution which it claims. There is no controversy over the amount.

It is to be observed that there is here no question of imposing a tax or any kind of burden whatever upon a national bank. The question is simply one of the distribution under the law of this Commonwealth between the Commonwealth itself and its municipalities of a tax collected by the Commonwealth from Malden Electric Company. In *First National Bank* v. *Commissioner of Corporations & Taxation*, 279 Mass. 168, an income tax had been assessed upon the bank as trustee with respect to income received by it for the benefit of a Massachusetts resident, and at least some slight burden was imposed upon the bank. The assessment was held valid, the court saying, at page 172, "The appellant as a national banking association was subject to the laws of this Commonwealth, where it was located, except as they may conflict with the paramount law of the United States *and is to be deemed an inhabitant of this Commonwealth.*[1] *Continental National Bank of Memphis* v. *Buford*,

[1] Emphasis supplied.

191 U. S. 119, 123, 124. *First National Bank in St. Louis* v. *Missouri*, 263 U. S. 640, 656. *Missouri* v. *Duncan*, 265 U. S. 17." See also 279 Mass. at page 174. It is settled that national banks are subject, in general, to the laws of the States in which they do business, unless those laws interfere with the purposes of their creation, tend to destroy their efficiency as Federal agencies, or conflict with the paramount law of the United States. *Lewis* v. *Fidelity & Deposit Co.* 292 U. S. 559, 566. For Federal jurisdictional purposes national banks have for many years been treated as citizens of the States in which they are located. Judicial Code of 1948, U. S. C. (1946 ed.) Sup. II, Title 28, § 1348, as appearing in act of June 25, 1948, 62 U. S. Sts. at Large, 933–934. *Leather Manufacturers' Bank* v. *Cooper*, 120 U. S. 778. *Ex parte Jones*, 164 U. S. 691. *Fulton National Bank* v. *Hozier*, 267 U. S. 276, 281. In *Cope* v. *Anderson*, 331 U. S. 461, at page 467, the court said, "Many provisions of federal law make national banks, in important aspects, peculiarly local institutions," citing statutes. On the same page the court refers to the place where a national bank does business as its "home" and as its "local habitat." In *Collector of Taxes of Boston* v. *Proprietors of the Cemetery of Mount Auburn*, 217 Mass. 286, at page 288, this court said, "A business corporation commonly is said to have its residence where its chief corporate activities are conducted." And see pages 290–291 and citations. If national banks set up in this Commonwealth are not residents here it is difficult to discover any other place of which they are residents.

In order to apply the distribution provisions of G. L. (Ter. Ed.) c. 58, § 24, as amended, in an instance like the present, it has become necessary to classify national banks established here either as residents or as "non-residents" within the meaning of that section. For the reasons outlined above it seems to us more reasonable and more consonant with the purposes of the section to classify them as residents.

We have carefully considered the argument in the brief of the Attorney General for the commissioner based on

statutory history, but we are of opinion that the whole basis of distribution has been so radically altered by the later statutory changes that the argument now has little persuasive force.

The decision of the board was right.

The commissioner shall notify the treasurer of Malden that there is due to that city the further sum of $29,485.45, and shall certify that amount to the State Treasurer for payment. G. L. (Ter. Ed.) c. 58A, § 13, as amended; c. 58, § 25, as appearing in St. 1945, c. 687.

*So ordered.*