*A. G. Weeks,* for the plaintiff.

---

CHARLES E. CLARKE *vs.* CITY OF FALL RIVER.

Bristol.    October 27, 1914. — December 31, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Municipal Corporations,* Mayor, Execution of contracts. *Contract,* Validity. *Fall River. Practice, Civil,* Conduct of trial, Exceptions. *Words,* "Prudential affairs," "*De bene.*"

Under the charter of the city of Fall River, St. 1902, c. 393, which in § 19 provides that, except in certain matters not material, "the executive powers of the city shall be vested solely in the mayor" and in § 37 provides that no contract made

by any officer or board of the city involving the expenditure of $200 or more shall be valid "until the approval of the mayor is affixed in writing," and under an ordinance of that city empowering the mayor to execute and deliver in behalf of the city all agreements and legal instruments made and entered into by the city, a contract in writing for the collection and disposal of the garbage in the city for five years, which is executed in the name of the city by the mayor, is valid and complete without the mayor going through the idle ceremony of signing it again to certify his approval.

The provision of R. L. c. 25, § 14, that a town may make contracts for the disposal of its garbage "by contract for a term of years made by the selectmen, board of health or other officers having charge thereof," which by R. L. c. 26, § 2, applies "to cities so far as consistent with the general or special laws relative thereto," is not consistent with the extensive authority vested in the mayor of Fall River by its charter, St. 1902, c. 393, and the mayor of that city, under § 19 of the charter and under a lawful ordinance of the city providing that the mayor shall execute and deliver in behalf of the city all agreements and legal instruments made and entered into by the city, lawfully may execute a contract, recommended to him by the board of health, for the collection and disposal of garbage in that city for five years.

The provision in the charter of Fall River, St. 1902, c. 393, § 38, that "No expenditure of public money shall be made by any officer or board, nor liability incurred by or on behalf of the city, beyond the amount duly appropriated therefor, contained in the annual appropriation order, or subsequently appropriated and thereafter granted by order of the board of aldermen, except as otherwise provided by law," does not mean that, where a lawful contract has been made by that city for the collection and disposal of garbage in the city for five years, the entire sum to be paid at regular intervals during the period must be appropriated at the start.

Although, at a long trial involving complicated issues, the presiding judge in his discretion may admit evidence "*de bene,*" meaning that it is admitted on the condition that its connection with the matters at issue shall be shown at a later stage of the trial and its competency and relevancy shall be made to appear, and afterwards, if not satisfied of such competency and relevancy, may order the evidence stricken out and instruct the jury to disregard it, yet this discretionary power to admit evidence before its competency is shown is one that ought to be exercised with great caution to avoid the danger of an unconscious influence upon the jury of evidence that afterwards is stricken out.

At the close of the evidence at a trial, in which the jury returned a verdict for the plaintiff, the defendant asked in writing for thirty-two rulings. The judge made six of the rulings, which he gave as instructions to the jury, "but refused to rule as further requested except as he instructed the jury." The defendant excepted, and "at the conclusion of the charge, the court understanding that his exceptions were thereby saved to all requests not given," the defendant's counsel said, "Your honor will save the defendant's rights?" The judge replied, "Your rights shall be saved." *Held,* that on this record the defendant had excepted to the refusal to make any of the rulings requested by him except the six given as instructions by the judge.

CONTRACT against the city of Fall River, with a declaration containing two counts, the first for the breach by the defendant of

a contract in writing dated April 22, 1909, by which the plaintiff agreed to collect and dispose of, in a sanitary manner, the waste garbage and swill found in the city of Fall River, as required by the board of health of that city, from May 1, 1909, until May 1, 1914, alleging that the plaintiff did the things on his part agreed to be done under the contract until February 1, 1911, and was ready and willing to perform the rest of his contract, but that the defendant without cause refused to allow further performance on his part and repudiated the contract; and the second count alleging that the defendant owed the plaintiff $336.75 and interest at the rate of five per cent per annum for unpaid monthly instalments for work done by the plaintiff under the contract during the nine months preceding February 1, 1911. Writ dated February 23, 1911.

In the Superior Court the case was tried before *Stevens*, J. The essential facts shown by the evidence are stated in the opinion. At the close of the evidence the defendant asked in writing for thirty-two rulings. The judge made six of those rulings, which he gave as instructions to the jury, "but refused to rule as further requested except as he instructed the jury according to the charge . . . and the defendant duly excepted using the following language at the conclusion of the charge, the court understanding that his exceptions were thereby saved to all requests not given:" The defendant's counsel, "Your Honor will save the defendant's rights?" The court, "Your rights shall be saved."

The jury returned a verdict for the plaintiff in the sum of $8,133.85; and the defendant alleged exceptions, those that were argued by it raising the questions that are stated and disposed of in the opinion.

*G. Grime*, for the defendant.

*A. S. Phillips*, for the plaintiff.

RUGG, C. J. This is an action to recover damages for breach of a contract alleged to have been made in writing between the plaintiff and the defendant for the collection and disposal of garbage in the defendant city for five years from May 1, 1909.

1. The defendant's first contention is that the contract was invalid because not executed as required by law. It was executed in the name of the defendant by the mayor and does not bear the

signature or indorsement of any other city officer or board. The signature of the mayor as the sole representative and agent of the defendant for the obvious purpose of executing an obligation binding in terms on the defendant was in substance and effect a compliance with § 37 of the charter of the defendant, St. 1902, c. 393, which requires that no contract made by any officer or board of the city involving the expenditure of $200 or more shall be valid "until the approval of the mayor is affixed in writing." It would be sacrificing substance to form to say that, after the mayor had manifested his direct affirmative sanction (*McLean* v. *Mayor of Holyoke*, 216 Mass. 62, 65) to every stipulation of the contract by executing it in behalf of the defendant, he must go through the idle ceremony of signing a nominal approval of it. The provision of § 19 of the charter, to the effect that except in respects not here material, "the executive powers of the city shall be vested solely in the mayor," in conjunction with the city ordinance expressly empowering the mayor to execute and deliver in behalf of the city all agreements and legal instruments made and entered into by the city, amply authorized the mayor to execute the contract here in question.

2. It further is urged that a contract for the disposal of garbage must be executed by the board of health in order to be valid. R. L. c. 25, § 14, authorizes the making of such contracts by towns, "by the selectmen, board of health or other officers having charge thereof." It is enacted by R. L. c. 26, § 2, that chapter 25 as to towns, "shall apply to cities so far as consistent with the general or special laws relative thereto." As there is no special provision in the Fall River charter concerning garbage disposal, the argument is that by force of the general law the board of health, or the board of aldermen as the city municipal board with powers corresponding broadly to those of selectmen of towns, alone are empowered to make such a contract. There is force in this argument; but it does not overcome countervailing considerations.

The charter of Fall River is a special law relative to that city. Its terms must govern, if in any respect in conflict with R. L. c. 25, § 14. The charter provides in § 7 for a division of the administration of all its affairs between a legislative department and "an executive department, which shall consist of one officer, the mayor," and in § 19 that "except as herein otherwise provided

the executive powers of the city shall be vested solely in the mayor, and shall be exercised by him through the several officers or boards of the city in their departments, under his general supervision and control." This plainly creates the mayor as the responsible administrative officer of the city. He cannot shield himself behind any restrictive charter provision from full accountability for the conduct of the affairs of the city. He is the real power which must be behind the making of every contract involving an expenditure of more than $200. Possessing as he does such ample executive functions, he is in every essential particular the officer who must "make contracts" (R. L. c. 25, § 14) in behalf of the city. There is nothing inconsistent with this in § 37 of the charter which requires every contract made by any officer or board where the amount involved is $200 or more to be approved in writing by the mayor. That section does not go to the length of making it necessary that contracts relating to the several departments must be signed by the departmental officers as well as by the mayor. Unless there is some further requirement, an execution of the contract by the mayor alone may bind the city.

It follows that the bald provision of R. L. c. 25, § 14, clothing the selectmen and boards of health of towns with power to make contracts respecting garbage disposal, is not consistent with the extensive authority vested in the mayor of Fall River by its charter. That charter by § 15 empowered the board of aldermen to make ordinances "for all purposes for which towns and cities may make by-laws and ordinances under general laws." R. L. c. 25, § 23, authorizes the making of by-laws among other matters "for directing and managing their prudential affairs." It was said by Chief Justice Shaw in *Willard* v. *Newburyport,* 12 Pick. 227, at page 231, as to the meaning of the equivalent term "prudential concerns of a town" that "perhaps no better approximation to an exact description can be made, than to say that it embraces that large class of miscellaneous subjects affecting the accommodation and convenience of the inhabitants, which have been placed under the municipal jurisdiction of towns, by statute or by usage." There is no express provision in the Fall River charter as to the execution of contracts such as is found in St. 1893, c. 444, § 40, which was under consideration in *Fiske* v. *Worcester, ante,* 428.

While of course no ordinance can contravene a statute, in the

absence of any controlling superior law it would be a proper subject for municipal legislation to regulate the form and manner of execution of contracts made in behalf of the city or town. Under these statutory conditions, it was within the power of the legislative department of Fall River to fix by ordinance the form of making contracts and to provide that they should all be executed by the mayor. Without such general regulation, it might be doubtful how contracts ought to be executed as to form in order to bind the city. It cannot be said to be beyond the appropriate province of an ordinance to lay down a uniform rule to guide all city officers and such of the public as have occasion to enter into contractual relations with the city. There is nothing in conflict with this conclusion in § 16 of the charter, which prohibits members or committees of the board of aldermen from taking part in the expenditure of money and from meddling in the executive business of the city. The enactment of such a general regulation is not interference with the making of contracts nor does it impair full executive freedom. It is open to none of the objections which prevailed in *Goddard* v. *Lowell*, 179 Mass. 496.

The facts are that the board of health of Fall River respecting the contract with the plaintiff took this action: They called for bids in writing to do the work of disposing of garbage according to detailed specifications. Several persons submitted bids, that of the plaintiff being the lowest. Thereupon, the board of health voted to accept and approve his bid and to "recommend that his Honor, the Mayor, enter into a contract with said Clarke at that price" and that thereafter in accordance therewith the contract in suit was made by the mayor. The proposal in writing by the plaintiff, accepted and approved by vote of the board of health duly entered on its records, if there had been no other legal requisite as to execution, would have constituted a contract. But as the charter and ordinance together required the execution of the contract by the mayor, the board of health performed its appropriate function in preparing and recommending to him the terms which it deemed demanded by public interests. There is nothing at variance with this result in *Oliver* v. *Gale*, 182 Mass. 39, and *Commercial Wharf Corp.* v. *Boston*, 208 Mass. 482, 488, both somewhat relied upon by the defendant.

3. It is argued that the contract was invalid because it called

for the expenditure of money in excess of the appropriation. By § 38 of the charter it is enacted that "No expenditure of public money shall be made by any officer or board, nor liability incurred by or on behalf of the city, beyond the amount duly appropriated therefor, contained in the annual appropriation order . . . of the board of aldermen, except as otherwise provided by law." An appropriation sufficient for the payment of the sums specified in the contract for a little more than one year only had been made at the date of this contract. Where the law authorizes the making of a contract for the performance of constantly recurring duties to run for more than one year, such a charter provision does not mean that the entire sum to be paid at regular intervals during several years must be appropriated at the start.

4. As the contract was legal and duly executed, the plaintiff is entitled to recover on the second count of his declaration for the percentages of payments already due but retained by the city under the terms of the contract while it was being performed.

5. The trial of this case lasted eight days and a large amount of testimony was introduced from about sixty witnesses. Once or twice during the trial the plaintiff offered evidence which was received by the judge "*de bene.*" Later it was stricken out and the jury instructed wholly to disregard it. No legal ground of exception here is disclosed. *Whitney* v. *Bayley*, 4 Allen, 173. It is assumed that in this ruling "*de bene*" was used not in the technical sense in which it occurs sometimes in statutes, (see 6 Encyc. Pl. & Pr. 625,) but as meaning conditionally or provisionally upon its connection with the matters on trial being later shown, or upon its competency or relevancy being made to appear at a subsequent stage. In a long trial of complicated issues, much must be left in this regard to the discretion of the presiding judge. Nevertheless, great caution ought to be exercised as the trial goes forward that evidence which can have at best only a remote bearing upon the points in controversy should not be admitted. The danger of an unconscious influence from evidence once received, although subsequently stricken out, is pointed out forcibly by Mr. Justice Hammond in *Newman* v. *Newman*, 211 Mass. 508. But it does not appear that there was any abuse of discretion or that anything was done which requires the sustaining of this exception. *Commonwealth* v. *Johnson*, 199 Mass. 55, 59.

6. The presentation of requests for instructions by the defendant, together with the further request that its rights be saved when the judge announced that all but six were denied except as given in other form in the general charge, was enough, in the light of the understanding by the judge to that effect, to constitute an exception to the refusal to give the rulings presented. *Thwing* v. *Clifford,* 136 Mass. 482. *Thurston* v. *Blunt,* 216 Mass. 264. All the exceptions which have been argued by the defendant have been considered. The others are treated as waived.

*Exceptions overruled.*