Hibbard, P. J.
The plaintiff and the defendant, the latter acting by its Board of Health, entered into a contract on December 11, 1933, for the collection and disposal of garbage. The contract was for a period of one year from the date thereof. Included in said contract was the following provision:
“Upon the completion of the contract said Marble is given the option to renew for a further term of one year.”
There had been prior contracts between the parties but whether such were valid or invalid is not now material. Before the expiration of the year, to-wit before December 11, 1934, there was a change in administration of the defendant’s affairs. The duties of the Board of Health and various other town officers were by appropriate action transferred to the Board of Selectmen, which body in November, 1934 advertised for bids for the collection of garbage. The plaintiff on November 17, 1934 gave written notice to the Board of Selectmen that he was exercising the option contained in the then existing contract to renew the same for a further term of one year after its expiration. The Selectmen however before December 11, 1934, entered into a new contract with one Crowley for the collection of the garbage. The plaintiff thereafter brought this action to recover for this breach and for the breach of a prior contract *485 dated December 10, 1929. This latter claim however is not now involved in the proceedings before this tribunal.
The defendant filed a general denial with allegation of payment. It further answered as follows:
“And the Defendant says that if any board or officer of the Defendant ever made any such contract for the Defendant as is mentioned in count 2 of the Plaintiff’s Declaration, a copy of which is thereto annexed and marked ‘B’, said board or officer acted, in so doing, without authority in law and in violation of the By-laws of the Defendant Town, and that therefore said contract was totally void and not binding on the Defendant.
And further answering the Defendant says that if any board or officer of the Defendant ever made any such option for the Defendant as is mentioned in count 2 of the Plaintiff’s Declaration and in the copy annexed thereto and marked ‘B’, said board or officer acted in so doing, without authority in law and in violation of the By-laws of the Defendant Town, and that therefore said option was totally void and not binding on the Defendant.”
It was agreed during the trial that the Defendant prior to any of its contracts with the plaintiff had “legally and lawfully adopted the following By-laws ’ ’:
“No Board or officer shall make any contract in behalf of the town, the execution of which shall necessarily extend beyond one year from the date thereof, unless special permission so to do has been given by vote of the town.”
“No town board, officer or committee, except as otherwise provided by law, shall in behalf of the town make any contract for labor, materials, or other expenditures for which no appropriation shall have been made at the time of such contract.”'
There was evidence at the hearing and the Trial Court found that in the “official report” of town officers for the year ending December 31, 1933, there was a report of the *486 Board of Health over the signature of the Chairman in which appeared on page 156 of said official report the following :
“The garbage contract has been given to Boy Marble of Berlin for another year at a salary of $2500. with an option for the year 1935.”
“Town Meeting Warrant: Article 1: To receive the reports of Town Officers and to act thereon.
Vote on the above article 1: It was voted on motion of Town Solicitor Peter J. O’Malley, that the reports of the various Town Boards and Officers as printed in the Annual Town Beport be accepted as the Official Acts of said Boards and Officers, and that one copy thereof be placed on file in the office of the Town Cleric. ’ ’
After the evidence and before argument both parties filed requests for rulings. Those of the plaintiff were as follows :
“1. The Board of Health of the Town of Clinton in the years of the contracts here involved was a board of public officers with statutory powers and duties and as such could not be unduly interfered with in the performance of these duties or in the exercise of these powers by any other board, officers, or even by the Town itself.
2. The Board of Health in those years was charged with the duty and was vested with the power of properly disposing of the town’s garbage so that said garbage would not menace the public health.
'3. In connection with the discharge of this duty the Board of Health had the power to make contracts for a term of years for the disposal of garbage, if in the exercise of reasonable discretion, the Board deemed it advisable to make such a contract. General Laws, Chap. 40, Section 4. In Re: Validity of By-law Article 17, Section 3.
4. This by-law does not apply to such contracts as are made by officers and boards on whom power has been expressly conferred by statute to make contracts extending more than one year.
*487 5. This by-law does not apply to contracts made by the Board of Health for the disposal of garbage in 1929 and 1933 under power vested in the Board of General Laws, Chapter 40, Section 4.
6. If this by-law was intended to apply to the power of the Board of Health to make contracts for the disposal of garbage, the by-law is repugnant to the aforesaid statutory provisions and is, therefore, invalid. General Laws, Chapter 40, Section 21.
7. If this by-law was intended to apply to the power of the Board of Health to make contracts for the disposal of garbage in 1929 and 1933, it was an unreasonable attempt to interfere with the discretionary power of the Board of Health and was therefore invalid.
8. This by-law does not come within the legal principle that municipalities may make by-laws ‘to regulate the form and manner of execution of contracts made in behalf of the city or town’, but is an improper interference with one of the substantive terms of the contracts in question in the case at bar. Clarke vs. City of Fall River, 219 Mass, at 585.
9. This by-law is an attempt to confer upon the voters in town meeting the power of fixing a duration of all contracts extending beyond the term of one year.
10. The town could not through its town meeting fix the duration of contracts for the disposal of garbage.
11. The town did not have the power at town meeting to refuse to permit the Board of Health to make contracts for the disposal of garbage extending beyond one year where such contracts were deemed necessary for the safe-guarding of the health of the citizens.
12. The contracts involved in the case at bar, if invalid when made, were capable of being ratified by the subsequent acts of the defendant town.
13. If the town, with full knowledge of all the essential facts, accepted the benefits accruing to it under the contracts, such acceptance constituted ratification.
14. If the town, with full knowledge of all the essential facts, permitted the plaintiff to incur the expense and detriment which he did not incur in reliance *488 upon the contracts involved here, such conduct on the part of the town constituted ratification.
15. Accepting the report of the Board of Health at the annual meeting of the town in the year 1934 containing the following statement: ‘ The garbage contract has been given Boy Marble of Berlin for another year at a salary of $2500 with an option for the year 1935’ is sufficient to constitute a ratification of the contract therein referred to.
16. The acceptance of the reports of the Board of Health in previous years regarding three year contracts, was an implied permission by the town to the Board to make the contract which was made in 1929 for a three year period with the option for a further three year contract 1932.

In Re: Waiver.

17. The plaintiff did not waive his right to have his 1929 contract renewed in 1932 for a further period of three years.

In Be: Validity of 1933 Contract.

18. Even if it be held that the by-law in question is valid it does not affect the contract entered into on December 11, 1933, whereby the plaintiff was given a contract for one year with the ‘option to renew for a further term of one year’, since the by-law in terms relates only to contracts ‘the execution of which shall NE'CESSABILY extend beyond one year from the date thereof. ’
19. Article 17, Section 5 of the By-Laws has no application to this case.
Clarke vs. City of Fall River, 219 Mass. 580 at 586.”
Those for the defendant were as follows:
“1. That on all the evidence the defendant is entitled to finding and judgment in its favor.
2. That the Town of Clinton could make its own provisions as to how contracts made under General Laws Chapter 40 Section 4, should be executed and how long they should run.
3. That Section 3 Article XVII of the By-Laws of the Town of Clinton is a valid by-law.
4. That Section 5 Article XVII of the By-laws of the Town of Clinton is a valid by-law.
*489 5. That the contract executed in 1929 by the board of health of the Town of Clinton with Bay P. Marble, was executed in violation of Section 3 Article XVII of the By-Laws of the Town of Clinton.
6. That the contract executed in 1929 by the board of health of the Town of Clinton, with Boy P. Marble was executed in violation of Section 5 Article XVTI of the By-Laws of the Town of Clinton.
7. That the contract executed in 1933 by the board of health of the Town of Clinton with Boy P. Marble was executed in violation of 'Section 3 Article XVTI of the By-Laws of the Town of Clinton.
8. That the contract executed in 1933 by the board of health of the Town of Clinton was executed in violation of Section 5, Art. XVII of the By-Laws of the Town of Clinton.
9. That contracts made by the boards or officers of municipalities in violation of by-laws or ordinances are invalid and do not bind the municipalities.
10. That the contract made in 1929 by the board of health of the Town of Clinton with Boy P. Marble is invalid and does not bind the town.
11. That the option contained in the contract made in 1929 is invalid and does not bind the town.
12. That the contract made in 1933 by the board of health of the Town of Clinton, with Boy P. Marble is invalid and does not bind the town.
13. That the option contained in the contract made in 1933 is invalid and does not bind the town.
14. That Section 3 Article XVTI of the By-Laws of the Town of Clinton is binding on all town boards and officers and those who make contracts with them.
15. That Section 5 Article XVII of the By-Laws of the Town of Clinton is binding on all town boards and officers and those who make contracts with them.
16. That any person making contracts with town boards or officers of the Town of Clinton chargeable with knowledge of the provisions of Section 3 Article XVTI of the Town By-Laws.
17. That any person making contracts with town boards or officers of Clinton is chargeable with knowledge of the provisions of Section 5 Article XVTI of the Town By-Laws.
18. That good faith on the part of the board of health in making the contracts in 1929 and 1933 with *490 Boy P. Marble will not render the contracts valid if they are made in violation of the Section 3 or Section 5 of Article XVII.
19. That the Town of Clinton is not estopped to deny the validity of the contract made in 1929.
20. That the Town of Clinton is not estopped to deny the validity of the contract made in 1933.
21. That the fact that similar contracts to that of 1929 had been made previously and never contested by the Town of Clinton does not prevent it from challenging the validity of the 1929 contract.
22. That the fact that similar contracts to that of 1933 had been made previously and never contested by the Town of Clinton does not prevent it from challenging the validity of the 1933 contract.
23. That the Town of Clinton never ratified the contract made in 1929 with Boy P. Marble.
24. That the Town of Clinton never ratified the contract made in 1933 with Boy P. Marble.
25. That the plaintiff waived whatever right he had for breach of 1929 contract by executing in 1932 a contract for one year with an option to renew.
26. That the contract made in 1933, if valid at all, is valid only for a term of one year.
27. That the plaintiff did not fulfill his duty to mitigate damages against the Town of Clinton.
28. That if the Court should give judgment to the plaintiff, then it should find that the plaintiff is not entitled to consequential damages, on all the evidence.”
The Trial Court denied all of the plaintiff’s requests except those numbered 2, 12, 18 and 19 but the plaintiff, according to the report, is not aggrieved by refusal to give those numbered 13,14,16 and 17.
The Court denied defendant’s requests numbered 1, 6, 7, 8,12,13, 24, 26 and 27 and gave the others. '
The defendant according to the report is aggrieved by the refusal to grant of its requests those numbered 1, 7, 8, 12, 13, 24 and 26.
The plaintiff also is aggrieved by the granting of the defendant’s requests numbered 2, 3, 14, 15 and 20, and the *491 defendant by the granting of the plaintiff’s requests numbered 18 and 19.
It thus appears the report is before us upon a claim therefor made by both parties.
The Trial Court made certain findings of fact inter alias as follows:
“First: That all contracts made by the Board of Health with the plaintiff prior to December 10, 1932, were in contravention of the By-Law which has to do with the making of contracts, the execution of which shall extend beyond one year from the date thereof unless special permission so to do has been given by vote of the town. I further find that no such special permission so to do has been given by vote of the town. I further find that if the plaintiff had any rights under the contract of December 10, 1929, that by accepting the contract dated the 10th day of December, 1932, and the contract dated December 11, 1933, he has waived any rights thereunder. I further find that there has been no violation on the part of the Board of Health of that Town by-law which prohibits Town Boards, officers or committees from making any contract for labor, materials or other expenditures for which no appropriation had been made at the time of such contract, because I find that where the law authorizes the making of a contract for the performance of constantly recurring duties, that such Town by-law does not mean that entire sum to be paid at regular intervals during the term of the contract must be appropriated at the start. I further find that said contracts, dated the 10th day of December 1932 and the 11th day of December, 1933 are not in contravention of the by-law prohibiting the making of a contract, the execution of which shall necessarily extend beyond one year from the date thereof, as the giving of the option, the exercise of which depended entirely upon the will of the plaintiff in this case, does not make a contract the execution of which shall necessarily extend beyond one year from the date thereof.
I find that the defendant through the action of its Selectmen in giving a contract to G-eorge Crowley for the collection of garbage broke the contract entered *492 into with the plaintiff and I find for the plaintiff in the sum of Twenty-one Hundred Eighty-three and 34/100 Dollars ($2183.34).”
The plaintiff in his brief has correctly and fully stated the principal issue here involved — was the contract dated December 11, 1933, with its option in the plaintiff to renew said contract for an additional year a contract which “would necessarily extend beyond one year” and therefore a contract prohibited by the by-law heretofore quoted.
The Trial Court by its action as to the requests and its finding held that the contract was not invalid or in other words held it could be completed in one year.
For the sake of clarity we re-state the by-law involved:
‘ ‘ Section 3. No board or officer shall make any contract in behalf of the town the execution of which shall necessarily extend beyond one year from the date thereof unless special permission so to do has been given by vote of the town.”
The argument of the plaintiff is briefly that
(1) The words “shall necessarily extend beyond one year” mean which must necessarily extend beyond one year.
(2) The word “shall” in a statute or by-law is ordinarily imperative. (Rea vs. Aldermen of Everett, 217 Mass. 427), and this is especially true where as in the first part of the by-law the word “shall” is used in a mandatory sense. (Bay State Street Railway Co. vs. Woburn, 232 Mass. 201.)
(3) The word “necessarily’’’ is equally imnerative.
(4) The option of renewal does not necessarily extend the contract beyond one year, the test being whether anything is required to be done by either of the parties which cannot be done within the year. The plaintiff could collect the garbage, the defendant could pay the plaintiff for such service all within the year. Acts which can be performed within a year are not acts which necessarily extend beyond a year.
*493 (5) The option clause did not make the contract one which must extend beyond the year. The option contemplated a new contract and not an extension and such is the rule of law (Klickstein vs. Neipris, 283 Mass. 91). The chance of the contract extending beyond a year was not a certainty. It was at most only a possibility.
(6) The provisions of the statutes of frauds are analogous. (Collins vs. Snow, 218 Mass. 542. Corpus Juris Vol. 27, page 189.)
This argument seems to us to miss the point. We are not concerned with the wisdom of the by-law. Its phrasing might have been improved. Obviously its purpose was to keep the control of municipal contracts within the power of the voters and to that end their servants, the town officials, were forbidden to make any contract which must necessarily extend beyond one year except by special permission of the voters. Clearly the contract in question necessarily extended beyond one year if the plaintiff exercised his option of renewal. The defendant had no control beyond the year if the option was exercised. If the contract were not in violation of the by-law, the board of health might make a contract granting an option from year to year for an indefinite period. The voters would thus be prevented from exercising a wise and salutary control of their affairs and the community be subjected to inefficiency or excessive costs. It requires no interpretive refinement to so construe the language of the by-law. In fact to hold otherwise would be to negative the language and purpose.
Our view may be stated in other words as follows: Reduced to its simplest terms, the voters of the defendant laid down a rule that its agents should not enter into any contracts on its behalf which would continue beyond one year without special permission. When the board of health executed the contract with the plaintiff they so phrased it that it might or might not be invalid. Had the plaintiff *494 failed to exercise the option the contract would clearly have been valid. The moment he exercised the option it became invalid and could not be enforced by the plaintiff. We do not find it necessary to find as to whether the contract was invalid ab initia.
We must therefore hold the contract was beyond the power of the board of health. The plaintiff argues that there is valid analogy in the statute of frauds and the ruling-in Collins vs. Snow, 218 Mass. 542. With that view we must disagree. The basis for the provision requiring all contracts which cannot be performed within one year to be in writing is entirely different from the fundamental reason underlying the by-law.
It now remains to determine whether there was any special permission by the voters of the town. Such permission must be found if at all in the action of the voters at the annual meeting in 1934. From the report it appears the usual custom in this Commonwealth prevailed in the defendant town. At its annual meeting in 1934 there was distributed to the voters as they entered the gathering place a bound volume called 1 ‘ official report” in which the various officers and boards caused their official reports to appear. In the report of the board of health found on page 156 there was the following sentence:
“The garbage contract has been given to Boy Marble of Berlin for another year at a .salary of $2500 with an option for the year 1935.”
In the Town Warrant Article 1 reads as follows:
“To receive the reports of town officers and to act thereon.”
Under this article the following vote was passed:
“It was voted on motion of Town 'Solicitor Peter J. O’Malley that the reports of the various town boards *495 and officers as printed in the annual town report be accepted as the official acts of said boards and officers and that one copy thereof be placed on file in the office of the town clerk. ’ ’
Whether this vote was in legal effect a “special permission” approving the contract made by the board of health was not decided by the Trial Court, its interpretation of the contract not requiring such. In determining whether there was a ratification we must bear in mind the relative paucity of information in the report and further that the vote under the warrant merely accepted the reports as a record of the official acts of the town officials. We must read into the vote approval and ratification if we are to construe it as in effect a “special permission”. It has been heretofore decided that “any ratification of an authorized contract in order to be effectual and obligatory must be shown to have been made with a full knowledge of all of the essential facts connected with the transaction to which it relates; especially it must appear that the existence of .the contract and its nature and consideration were known to the party who is alleged to have become liable upon it by virtue of the subsequent adoption or assent. Dickinson vs. Inhabitants of Conway, 12 Allen 487, 491.
The plaintiff cites certain cases in support of his contention that the action of the voters was a ratification of the contract. Each of these cases however is clearly distinguishable and in each the voters had more knowledge of the essential facts than' in the case at bar. While it is not required that we so hold, there is ground for a finding that by using the word “special” in the enactment of the by-law it was the intention of the voters that all contracts calling for ratification should be specifically mentioned in an article in the warrant both that the voters might be fully informed as to the terms of the contract and that any rati *496 fication should not he a part of a general vote. Public pol - icy clearly requires that the voters should have full knowledge specifically imparted in order that they may understandingly and fully discuss the question whether there shall be a grant of power more extensive than that found' in the by-law.
Holding this view,, we must rule that not only was the contract invalid as beyond the power of the Board of Health but that there was no special permission granted by the voters. It follows that there was prejudicial error on the part of the Trial Court.
The plaintiff however has briefed and argued the point that even if this be so, the by-law was an infringement upon the statutory powers of the board of health and therefore carried no legal weight. The decision of this question depends upon what limitations if any there are upon the action of the town in directing the contracting power of its board of health. The collection and disposal of garbage has long been considered of great importance in urban communities for public health is involved. Early statutes beginning with Laws of Massachusetts 1797, eh. 16, §11, required individual inhabitants to dispose of garbage and in each community some board or officer was required to see that it was not allowed to collect and thus create a nuisance. This responsibility was placed in some towns in boards of health and in others in selectmen. The passage of chapter 377 of the Acts of 1889 first conferred the power of- contracting for "the disposal of garbage at public expensé in boards of health or selectmen or other board or officer charged with that duty. At the time of its enactment the duty was in such officials by virtue of Public Statutes oh. 80, §3. Unquestionably the legislature intended that the new permissive power should lodge in these same officials. That power cannot be assumed by any other board or officer. *497 Morrison Admx. vs. Lawrence, 98 Mass. 219. Commercial Wharf Corp. vs. Boston, 208 Mass. 482.
The power is now found in General Laws, eh. 40, §4. It reads as follows:
“A town may make contracts for the exercise of its corporate powers and for the following purposes: For the disposal of its garbage, refuse and offal by contracts for a term of years. Contracts for such disposal may be made by the selectmen, board of health or other officers having charge thereof.”
The words “term of years” were interpreted in Clark vs. Fall River, 219 Mass. 580, to mean power to make a contract for more than one year. The board of health of the defendant had thus prior to its abolition in 1934 the power aside from the by-law to execute a contract for the disposal of garbage for more than one year. It has been held that the power of a town or city to interfere by by-law or ordinance with contracts by its boards or officers is limited to matters of form, execution and regulation involving honesty and fair play. U. S. Drainage Company vs. Medford, 225 Mass. 467.
Chief Justice Holmes said in Oliver vs. Yale, 182 Mass. 39:
“It has not undertaken to interfere with the conduct of the board in matters requiring and confided to the special knowledge of the members.”
The decision in Clark vs. Fall River, supra, is not an authority in the case at bar as a city charter which is itself an act of the legislature was there involved. Nor do we feel that the statutes or decided cases involving school committees or schools are authority for they “hold a favored place in the law for obvious reasons ’ ’.
In the absence of controlling decisions we must decide the question without help.
*498 Admitting the town cannot control the acts of its board of health under the powers granted by statute, it yet seems to us the by-law was not an attempt to so control. Clearly it left untouched all matters of administration and detail which.were based upon special knowledge and the specific end sought. The voters simply said to the board of health in office “You may do whatever you think best as to the disposal of garbage except that if you wish to contract for more than one year you must consult us”. "Whether this by-law made for extra expense or inefficiency is beside the question. It has been said in Clark vs. Fall River, supra:
“While of course no ordinance can contravene a statute in the absence of any controlling superior law it would be a proper subject for municipal legislation to regulate the form and manner of execution of contracts made in behalf of a city or town. ... It cannot be said to be beyond the appropriate province of an ordinance to lay down a uniform rule to guide all city officials and such of the public as have occasion to enter into contractual relations with the city.”
The by-law in question is obviously reasonable and its validity is presumptively favored. 43 Corpus Juris §908, page 570.
We must therefore hold that the by-law is valid and its provisions controlled the board of health in December, 1933.
The remaining question is that raised by the by-law in effect forbidding the making of any contract for which no appropriation shall have been. made. This question we do not find it necessary to decide. The case was fully tried. Prejudicial error having been found, the finding for the plaintiff must be ordered vacated and a finding for the defendant entered.