FRANK DOS SANTOS *vs.* CITY OF PEABODY.

Essex.   March 5, 1951. — June 27, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Municipal Corporations*, Contracts, Officers and agents, Garbage disposal. *Contract*, Validity, With municipality. *Peabody*. *Evidence*, Judicial notice.

There can be no judicial notice of city ordinances.

A contract for collection of garbage signed in behalf of the city of Peabody by its mayor and the superintendent of its infirmary was invalid for noncompliance with a requirement of § 34 of the city charter, Spec. St. 1916, c. 300, that, in addition to the approval of the mayor, that "of the department or board making the contract . . . [be] affixed thereto" where, although it appeared that the city maintained a piggery in connection with the infirmary and that the superintendent had charge of collecting all garbage in the city, there was nothing beyond bare assertions in the contract to show that he was the head of any department with authority to approve such a contract.

CONTRACT.   Writ in the Superior Court dated September 1, 1948.

The action was heard by *Baker*, J., without a jury.

*J. A. Liacos*, for the plaintiff.

*G. Ankeles*, City Solicitor, for the defendant, submitted a brief.

COUNIHAN, J.   This is an action of contract to recover for breach of an alleged written contract.   The answer of the city, among other defences, sets up illegality of the contract.   The contract dated June 25, 1945, purported to be one for the collection of garbage in three wards of the city for a period of three years for which the plaintiff was to receive $35 a week.   There was an option for renewal not here material.   The contract was signed by the plaintiff and on behalf of the city by the then mayor and one Charles Reynolds, "Supt."   It recited that it was made by the city

"acting in making this contract through the Infirmary Department," and in its preamble there were further recitals that "under the rules and regulations, the right to the collection of such garbage in the City of Peabody is granted in the said Infirmary Department of the City of Peabody," and that "the Superintendent of the said Infirmary Department deems it advisable to relinquish the right of collecting garbage and transfer the same to said Frank Dos Santos." Both parties satisfactorily carried out their obligations until April 16, 1948, when a succeeding mayor notified the plaintiff in writing that the contract was illegal because of nonconformity with provisions of law relating to contracts with a city. He ordered the plaintiff to cease further collections.

The action was tried to a judge without a jury who found for the plaintiff. He denied certain requests of the plaintiff on damages and denied all of the defendant's requests. The action is here upon exceptions of both parties.

There was evidence that, at the time the contract was executed, the city maintained a piggery in connection with the operation of the infirmary of which Reynolds was superintendent. He then also had charge of collecting all garbage in the city, and after the contract was executed he continued to collect garbage in those wards not included in the contract.

There is no dispute as to the power of a city to make contracts for the disposal of garbage. G. L. (Ter. Ed.) c. 40, § 4, as amended. The word town includes a city. C. 40, § 1. The issue here is whether or not such power was legally exercised. The charter of the city, Spec. St. 1916, c. 300, § 34, reads in part, "All contracts made by any department, board or commission in which the amount involved is two hundred dollars or more shall be in writing, and no such contract shall be deemed to have been made or executed until *the approval of the mayor and of the department or board making the contract is affixed thereto*" (emphasis supplied). The city asserts that this contract was illegal because of noncompliance with this charter requirement.

It has been held that "One dealing with a city or town

cannot recover if statutory requirements such as are contained in the defendant's charter have not been observed. . . . And, at least where the question is seasonably raised, the burden of proving compliance must rest upon the plaintiff as with other essential elements of his case." *Continental Construction Co.* v. *Lawrence*, 297 Mass. 513, 516. *Cerwonka* v. *Saugus*, 316 Mass. 152, 154. *Anchor Steel Co.* v. *Granville*, 318 Mass. 688, 691. And more particularly "A municipality cannot be bound by contract by those purporting to act for it without something to show that the execution of the contract was duly authorized." *Wood* v. *Concord*, 268 Mass. 185, 189. It is true that there was evidence that Reynolds was superintendent of the infirmary and managed its affairs, which included by inference the piggery, and that he also had charge of the collection of all the garbage in the city, but there was no evidence, by way of an ordinance or otherwise, defining his powers and duties. The charter of the city is silent in this respect. We cannot take judicial notice of city ordinances. *Cerwonka* v. *Saugus*, 316 Mass. 152, 153. No evidence of any kind was offered in support of the recitals in the preamble of the contract to the effect that the right to collect garbage in the city was granted to the infirmary department and that the superintendent deemed it advisable to relinquish the right of collecting garbage and transfer it to the plaintiff. And more particularly the "rules and regulations" referred to in the preamble of the alleged contract were not shown or proved. This bare assertion of the authority of the infirmary department and of its superintendent has nothing in the record to back it up.

In passing it may be well to note perhaps that § 4 of c. 40 provides that contracts for the disposal of garbage may be made by selectmen, boards of health, or other officers having charge thereof. But who such other officers were and the source of their authority do not appear from any evidence in the present case.

It may be helpful also to direct attention to G. L. (Ter. Ed.) c. 47, §§ 1 and 2, which permit a town to provide and maintain an infirmary with directors chosen to have the

management thereof, who may appoint a superintendent. In case of failure to choose such directors provision is made that the board of public welfare shall be such directors. There was no evidence in the record of the creation of such directors or of any board of public welfare. By inference at least it would appear that a superintendent of an infirmary would be a subordinate of the directors.

The plaintiff seems to rely upon the approval of the superintendent as one of such "officers having charge thereof" as provided in § 4 of c. 40. The charter, however, calls for approval "of the department or board making the contract." Its terms must govern if there is any conflict with § 4 of c. 40. *Clarke* v. *Fall River*, 219 Mass. 580, 583. There was no evidence that the superintendent was the head of any department with authority to approve such a contract.

The plaintiff puts great emphasis on *Clarke* v. *Fall River*, 219 Mass. 580, in certain other aspects of that case. It is completely distinguishable, however, for there the mayor by charter had sole authority to execute contracts on behalf of the city. Here he did not.

Among the requests filed by the defendant and denied by the judge was No. 5, "There is no evidence that the superintendent of the city infirmary had the power to execute or approve the contract declared on so as to make it a binding contract within the meaning of § 34 of the Peabody city charter." It was error to deny this request which is decisive of the case. The finding of the judge must be set aside and judgment must be entered for the defendant. Because of this we need not consider the exceptions of the plaintiff which relate solely to damages. The entry must be

*Plaintiff's exceptions dismissed.*
*Defendant's exceptions sustained.*
*Judgment for the defendant.*