BROWNING-FERRIS INDUSTRIES, INC. vs. TOWN OF SWANSEA.

No. 95-P-824.

Suffolk. June 13, 1996. - September 26, 1996.

Present: BROWN, PERRETTA, & GREENBERG, JJ.

*Municipal Corporations,* Contracts. *Contract,* Municipality, Performance
and breach, Validity.

Where a municipality signed a three-year contract for solid waste collection
and disposal services ("constantly recurring duties") that contemplated
expenditure of unappropriated funds, the lack of sufficient appropriation
was no defense to an action brought by the waste disposal firm seeking
full payment for services it had rendered. [384-385]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 24, 1994.

The case was heard by *Gordon L. Doerfer,* J., on a motion
for summary judgment.

*Mark W. Batten* for the plaintiff.

*Gerald E. Johnson* for the defendant.

BROWN, J. We are asked to decide whether the lack of a
sufficient appropriation by a town bars recovery of money
due on multi-year contracts, in writing, for constantly recur-
ring duties, if the town initially appropriated funds to pay for
the services to be provided. When, as here, the multi-year
contract is for a constantly recurring basic municipal func-
tion, we think the answer is no.

For solid waste collection and disposal services provided
the defendant town, the plaintiff brought this action seeking
payment of amounts that exceeded the funds appropriated by
the town for fiscal years 1991 and 1992. A judge in the
Superior Court granted summary judgment in favor of the
town. This was error. The circumstances of this case are con-
trolled in material respects by the reasoning of *Clarke* v. *Fall
River,* 219 Mass. 580, 586 (1914). See also *Marble* v. *Clinton,*
298 Mass. 87, 89 (1937).

There are no disputed material facts. The plaintiff, Browning-Ferris Industries, Inc. (BFI), is in the business of waste hauling and disposal. In June, 1990, pursuant to a written contract, later supplemented in 1991, BFI agreed to provide waste disposal services to the defendant town for a three-year period beginning July 1, 1990.[1] The town admitted in its answer to the complaint that both of the contracts complied with all applicable laws and were negotiated by the duly authorized board of selectmen. BFI contends (and the town does not dispute) that in 1991 and 1992 the cost of its services exceeded the amount the town appropriated for those services ($700,000 per year) by an aggregate $61,483.54.

The town concedes that BFI provided the services for two years,[2] as agreed, and that it has refused to pay the full amount charged for the services rendered. The town, in defending its refusal, claims that it had not appropriated sufficient funds to pay BFI, and goes on to assert the familiar principle that municipal liability is limited by the town's appropriation. See G. L. c. 44, § 31, as inserted by St. 1946, c. 358, § 23 ("No department . . . of any city or town . . . shall incur a liability in excess of the appropriation made for the use of such department").

This case, however, falls within a narrow exception to that general rule, the so-called "constantly recurring duties" exception. Notwithstanding § 31, municipalities may validly enter into multi-year contracts for certain basic services, such as waste removal and utilities, even though those contracts obviously call for expenditure of unappropriated funds.[3] *Clarke* v. *Fall River*, 219 Mass. at 586. See also *Salisbury Water Supply*

---

[1] The original contract's compensation clause provided for payment of a fixed sum, payable in thirty-five equal monthly installments. BFI's compensation under the supplemental contract was to be determined on a per ton basis. The supplemental contract did not provide for a fixed sum, although it did contain an estimated sum based on a formula that included an estimate of the town's annual waste tonnage. It is unclear from the record on appeal whether the supplemental contract's compensation provisions superseded the original's provisions or whether the compensation provisions of the two contracts were to be aggregated. The point is not material, however, as the town does not argue that BFI's charges exceeded amounts provided for in the contracts.

[2] The third and final year of these contracts is not at issue on appeal.

[3] If this were not so in circumstances such as those presented here, we could effect a perverse result, i.e., if a waste hauler, like BFI, were required to provide services free of charge after an appropriation ran out, towns

*Co.* v. *Salisbury*, 341 Mass. 42, 47 (1960). When a town subsequently refuses to pay for these services as rendered, the lack of a sufficient appropriation is no defense. See, in addition to *Clarke, supra, Salisbury Water Supply Co.* v. *Salisbury, supra* at 49, and cases cited therein. Cf. *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 208 (1982).

The judgment is reversed, and the case is remanded to the Superior Court for the entry of a new judgment for the plaintiff in the amount due for the services rendered.

*So ordered.*

---

could very well be tempted to appropriate less than sufficient funds and thereby avoid paying for services rendered. Another regrettable consequence would be the inflation of contract prices, as service providers attempt to compensate up front for anticipated tail end payment deficiencies. Indeed, approval of the town's position might well tend to discourage providers from participating in such an aribtrary and unfair market. In either case, the public would be disserved.