Singh, J.
After the town of Westford (‘Town”) failed to make certain payments to retired Westford police officer Mary Ann McShea (“McShea”) related to health insurance premiums and medical expenses, McShea brought this action for breach of contract and violation of G.L.c. 41, §100B. After a jury-waived trial, a judge found in favor of McShea on the breach of contract claim, but ordered her to change her health insurance to mitigate her damages for health insurance premium differential payments. On the claim for violation of the indemnification law, the judge ordered the Town to reconstitute its indemnification board and reconsider McShea’s claim for medical expense reimbursement Both parties appealed. We reverse the judgment
McShea was employed as a police officer for the Town on May 2,1988. Three and a half years later, on December 2,1991, she fell and injured herself while on the job. She continued to work for another six and a half years until June 2,1998. She applied for, and received, disability retirement two years later on June 30, 2000. The following year, on November 13, 2001, the Town voted to accept G.L.c. 41, §100B (the “indemnification law”), which indemnifies retired police officers and firefighters for medical expenses incurred as a result of injury in the line of duty. On December 26, 2001, McShea and her union, the International Brotherhood of Police Officers, Local 326, signed a memorandum, which was countersigned by the town manager, purportedly on behalf of the Town, relating to the Town’s payment of bills incurred by McShea for treatment for the injuries that caused her to file a disability retirement.
According to the memorandum, the Town agreed to pay seventy (70%) percent of those bills submitted from the date of her retirement on June 30,2000 to the date of the Town’s acceptance of the indemnification law on November 13, 2001. With respect to later bills, the memorandum provided that they would be handled in accordance with G.L.c. 41, §100B. McShea was to submit her bills on a quarterly basis, and the Town was to make payment within sixty days of the end of each quarter. Additionally, the Town agreed to pay McShea’s share of the health insurance premium difference between her then current health insurance and the Gower cost) health maintenance organization (“HMO”) insurance administered by the Town, until McShea switched to the Town administered insurance. Although the memorandum acknowledged that McShea would not be able to switch until the next open enrollment period in October, 2002, it did not explicitly require McShea to switch insurance at all.
*245 The Town paid McShea’s submitted bills up to November 13, 2001, the date that the Town had accepted the indemnification law. The Town also paid McShea’s health insurance premium differential until October, 2002, the time of the next open enrollment period. Although McShea did not switch to the Town’s HMO insurance during that open enrollment, the Town ceased making premium differential payments once open enrollment closed. McShea submitted her claims, arising after the acceptance of the indemnification law, to the Town’s newly formed indemnification board, which denied the claims on April 26, 2002. At that time, the indemnification board offered to reconsider its decision if McShea agreed to submit to an evaluation by one of three listed doctors. McShea did submit to such evaluation on June 14,2002.[1] During further indemnification board meetings in November and December, 2002, board members suggested that a psychological evaluation may be in order. Ultimately, the Town made no further payments to McShea. Nevertheless, McShea continued to submit her bills quarterly to the Town.[2]
On July 15, 2004, McShea filed a complaint against the Town for breach of contract and violation of the indemnification law. A trial was scheduled for May 18,2006. On that date, the parties filed a stipulation of remand, agreeing to submit the dispute regarding the payment of premium differentials to the Westford board of selectmen, to submit the dispute regarding the payment of claims submitted after the acceptance of the indemnification law to the indemnification board, and to reconstitute the indemnification board[3] with a physician specializing in the type of injury sustained by McShea, all in the spirit of settlement. The parties were unable, however, to secure any such physician to serve on the indemnification board. As a result, the parties were unable to settle their dispute and returned to court a year later for a jury-waived trial on June 8, 2007.
At trial, McShea sought to establish through her own testimony and that of the town secretary that she had complied with her obligations under the agreement, namely, turning in her bills on a timely basis. With additional documentary evidence, she sought to establish that the Town had failed to reimburse her for medical expenses submitted to the indemnification board since November 13,2001, the date the indemnification law went into effect, and had failed to reimburse her for the premium differential from October, 2002, the date that the open enrollment period closed. After McShea rested, the Town moved for involuntary dismissal on the basis *246 that McShea had failed to establish that the memorandum was enforceable against the Town. The trial court deferred ruling. The Town presented the testimony of the town manager who stated that the memorandum had been drafted by the human resources director, had not been reviewed by town counsel, and had not been submitted to the board of selectmen for approval. Additionally, the Town had set aside no money to fund the expenditures called for in the memorandum. The Town also submitted a copy of the Town’s charter and asked the court to take judicial notice of it. At the conclusion of trial, the Town renewed its motion for involuntary dismissal. The trial court again deferred ruling.[4]
The trial judge ultimately ruled that the Town had breached the memorandum by failing to pay the premium differential after October, 2002 in the amount of $6,272.52, and ordered the Town to make such payments through October, 2007, the next open enrollment period following the trial. Ruling that McShea was required to mitigate her damages, the judge ordered McShea to switch to the intermediate level insurance plan offered by the Town during open enrollment in October, 2007. With respect to the claim alleging violation of the indemnification law, the judge ordered the Town to reconstitute the indemnification board with a “licensed medical professional, including a registered nurse or a physician’s assistant, but not a chiropractor,” within a certain time frame, and further detailed the requirements of the indemnification board’s actions with respect to McShea’s claims. McShea appealed the ruling requiring her to change health insurance plans and the ruling dictating the membership of the indemnification board. The Town cross-appealed on the bases that the memorandum was unenforceable and the judge was without authority to order the Town to reconstitute the indemnification board.
We agree with the Town that McShea failed to prove that the memorandum was enforceable against the Town. For a municipality to be bound by a contract, there must be an underlying authority in the municipality to make the contract, and the contract must be made by the municipality’s authorized agent. Monadnock Display Fireworks, Inc. v. Town of Andover, 388 Mass. 153, 156 (1983), citing, inter alia, Lord v. Town of Winchester, 355 Mass. 788, 789 (1969). General Laws c. 40, §4 provides that “[a] city or town may make contracts for the exercise of its corporate powers, on such terms and conditions as are authorized ... in accordance with a duly adopted charter.” In this case, the Town adopted a charter that gave the town manager authority to negotiate contracts with town employees over wages and other terms and conditions of employment, “subject to the approval of the board of selectmen.” St. 1989, c. 480, §10 (c). Thus, the Town had the authority to enter into a contract with *247 McShea concerning her disability retirement benefits, provided that the contract was negotiated by the town manager and approved by the board of selectmen.
Although McShea presented evidence that the memorandum was negotiated by the town manager, she presented no evidence that the board of selectmen approved the memorandum. Therefore, she failed to establish that a valid contract, enforceable against the Town, had ever been created. See Park Drive Towing, Inc. v. City of Revere, 442 Mass. 80, 84-85 (2004) (where towing company arranged with chief of police to provided certain services, but failed to get mayoral approval, as required by statute, court stated that “inquiring whether the city breached a contract is pointless, because no enforceable contract existed”). “A contract with [a municipality] is not formed until the necessary statutory requirements are fulfilled.” Urban Transp., Inc. v. Mayor of Boston, 373 Mass. 693, 696 (1977). Persons dealing with a municipality must take notice of limitations upon the contracting power of the municipality and cannot recover upon contracts attempted to be made in violation of them. Adalian Bros. v. City of Boston, 323 Mass. 629, 631 (1949).
These requirements are elements, fixed by law, that are essential to the formation of a contract imposing liability on a municipality. See Park Drive Towing, Inc., supra at 84. They are not mere formalities, but rather serve important public purposes. The requirements limit the power of individual public officials and unify control of the municipality’s financial transactions. They also guard against waste, fraud, and abuse, and thereby help to place cities and towns on a sound financial footing. See Urban Transp., Inc., supra at 697. Because the actual extent of the authority of public officials is a matter of record, those dealing with officers or agents of municipalities must, at their own peril, see to it that those officers or agents are acting within the scope of their authority. Sancta Maria Hosp. v. City of Cambridge, 369 Mass. 586, 595 (1976). It is, therefore, the party seeking to recover from a municipality who has the burden of proving compliance with all statutory prerequisites. Park Drive Towing, Inc., supra at 84, citing Richard D. Kimball Co. v. City of Medford, 340 Mass. 727, 729 (1960).
McShea argues that, before she could be put to the burden of proving the enforceability of the memorandum, the Town was required to raise it as an issue for trial. She contends that the Town failed to raise the issue in its answer or in its pretrial memorandum,[5] and, therefore, that the burden shifted to the Town to prove noncompliance. *248 [6] Contrary to McShea’s contention, it was her initial burden to prove a legally binding contract as part of her prima facie case. Anchor Steel Co. v. Town of Granville, 318 Mass. 688, 691 (1945) (burden of proving legally enforceable contract rested upon plaintiff). In this case, McShea could not establish a legally binding contract unless she showed that the board of selectmen had approved the memorandum. See Urban Transp., Inc., supra at 696 (there is no contract with a municipality unless statutory prerequisites are fulfilled).
In any event, it would be contrary to public policy to bind the Town to an agreement drafted by its human resources director, not reviewed by its town counsel, and not funded or approved by its board of selectmen, which financially obligated the Town to an individual for her lifetime. See O’Donnell v. Bane, 385 Mass. 114, 116-117 (1982) (courts may consider unpleaded claim of illegality or unenforceability due to violation of public policy). See also Coughlin v. Royal Indem. Co., 244 Mass. 317, 319 (1923) (contract in violation of workers’ compensation law held unenforceable even though defense of illegality not pleaded). The enabling statute, authorizing the Town to contract pursuant to a duly adopted charter, specifically provides that a “city or town may not contract for any purpose, on any terms, or under any conditions inconsistent with any applicable provision of any general or special law.” G.L.c. 40, §4. Enforcement of the memorandum would be inconsistent with St. 1989, c. 480, §10(c), which requires board of selectmen approval. Thus, public policy, embodied in a legislative enactment, prohibits enforcement of the memorandum. See Sancta Maria Hosp., supra at 596 (“ [W] e will not enforce a contract the terms of which were never assented to by the city.”). See also City of Westfield v. Harris & Assocs. Painting, Inc., 567 F. Supp. 2d 252, 256 n.3 (D. Mass. 2008) (listing Massachusetts cases in which courts considered enforceability of contract even where illegality issue was not raised in advance, because enforcement would be contrary to public policy).
We also agree with the Town that the trial court was without authorily to order reconstitution of the indemnification board. The indemnification board was created pursuant to G.L.c. 41, §10013, which sets forth the constitution of the board and the basis on which the board should act. The statute, however, provides no avenue of appeal. Where no such avenue is available, a party aggrieved by the actions of an officer or a public body exercising judicial or quasi-judicial functions may bring an action in the nature of certiorari in the Superior Court or in the Supreme Judicial Court. G.L.c. 249, §4. That review is limited to the record of the proceeding to determine whether the decision was supported by substantial evidence. Durbin v. Board of Selectmen of Kingston, 62 Mass. App. Ct. 1, 5 (2004). Thus, McShea’s claim that the Town violated G.L.c. 41, §100B could have been heard only by the Superior Court or Supreme Judicial Court. The District Court judge was, therefore, without authority to order the Town to reconstitute the indemnification board.
The trial court’s judgment for the plaintiff is reversed and vacated. A judgment for the defendant is to be entered.
So ordered.

 The doctor concluded that McShea’s condition had reached an “end point,” that her ongoing treatments were “palliative rather than restorative,” and that the specific treatments for which McShea sought expense reimbursement at that time (chiropractic treatment 3-4 times a week, massage therapy once a week, gym membership, home traction 20 minutes per day, Tempur-Pedic Pillow, Darvocet medication) were unreasonable for injuries she sustained more than ten years prior.

 These submissions sought expense reimbursement for visits to her primary care physician, orthopedic surgeon, acupuncturist, pain management specialist, psychiatrist, multiple chiropractors, and multiple massage therapists, in addition to expenses for her Curves health club membership.

 At trial, the town manager testified that McShea’s claim was the first and only claim submitted to the indemnification board.

 The judge implicitly denied the motion in ruling that the Town breached the memorandum. At the conclusion of trial, the Town offered proposed rulings, specifically seeking rulings concerning the enforceability of the memorandum. Although the judge directed the parties to “See Margins” for rulings on the Town’s requests, the copy of the proposed rulings included in the record of this appeal contained no such margin rulings. This Division, on its own initiative, obtained the rulings from the trial court. The judge denied each request for a ruling concerning the enforceability of the memorandum, even though each request included a correct proposition of law with proper citation to authority.

 In its answer, the Town admitted that the memorandum existed, but denied that it obligated the Town in any way. Although it did not mention the issue of the enforceability of the memorandum in the pretrial conference memorandum (filed eighteen months prior to trial), the Town did raise the issue at the first scheduled trial date on May 18,2006, more than a year before the actual trial.

 McShea relies on language in Dos Santos v. City of Peabody, 327 Mass. 519 (1951) to support her contention regarding burden shifting. In Dos Santos, the Court stated: “One dealing with a city or town cannot recover if statutory requirements such as are contained in the defendant’s charter have not been observed.... And, at least where the question is seasonably raised, the burden of proving compliance must rest upon the plaintiff as with other essential elements of his case” (emphasis added). Id. at 520-521. That case did not discuss, however, what constituted an issue being raised seasonably, or the consequences if an issue were not so raised.